## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

David Le Roy Gamble Jr., Cyrus Patrick Gladden II,
David James Jannetta, Jerrad William Wailand,
Clarence Antonia Washington, and
all others similarly situated,

**Plaintiffs,**

v.

Minnesota State-Operated Services, Minnesota
State Industries, Minnesota Sex Offender Program,
Department of Human Services and the State of
Minnesota, Emily Johnson Piper, Shelby Richardson,
and any John and Jane Does
1-20 (as unknown individuals),

**Defendants,**

Civil File No. 16-cv-2720 JRT/JSM

**COLLECTIVE AND CLASS
ACTION COMPLAINT
FOR VIOLATION OF
29 *U.S.C.* SECTION 206
AND FOR VIOLATIONS OF
AMENDMENTS XIII AND XIV
TO THE UNITED STATES
CONSTITUTION**

RECEIVED
BY MAIL

AUG 12 2016

CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

### INTRODUCTION

1.      In this Collective and Class Action Complaint, collective mention of the "Plaintiffs" herein means all Named Plaintiffs and all Members of the Plaintiff Class described herein. The term "Collective Plaintiffs" refers to all Named Plaintiffs who are aggrieved by Count I, infra, as to Defendants' refusal to pay the federal Fair Labor Standards Act ("FLSA") minimum wage to said Collective Plaintiffs for their work as patient-workers within the Minnesota Sex Offender Program ("MSOP"). The "Representative Plaintiffs" herein are the following Named Plaintiffs: David Le Roy Gamble, Jr., Cyrus Patrick Gladden II, Jerrad William Wailand, Clarence Antonia Washington, and David James Jannetta. The Class Action as to Counts II through V herein (as to imposition of involuntary servitude and denial of equal protection, and substantive and procedural due process, see infra) is brought by these Representative Plaintiffs on behalf of themselves and all other members of the Plaintiff Class as to Counts II-V. The "Plaintiff Class" is defined as all members of either the "Equitable Relief Class" or the "Damages Class" alleged infra. When Plaintiffs are hereinafter referred to in their role as to said Plaintiff Class, they are sometimes collectively referred to as "Class Plaintiffs."

2.    As used herein, the term "patients" means all persons either already under indeterminate civil commitment to MSOP pursuant to *Minn. Stat.* Chapter 253D, or who are detained by MSOP pending outcome of such civil commitment case.

3.    This *Collective and Class Action Complaint* (hereinafter sometimes, the "*Complaint*") is brought against Defendants in their official and personal capacities for violations of Collective Plaintiffs' statutory right to a federally prescribed minimum wage per hour and for the right of all members of the Plaintiff Class to Equal Protection of the Laws under Amendment XIV to the *United States Constitution* in conjunction with that deprivation of said minimum wage.

## NATURE OF THE ACTION

4.    The Collective Plaintiffs bring said *Complaint* for and on behalf of themselves, alleging violation of their rights under 29 *U.S.C.* § 206 to minimum wage pay.   The Representative Plaintiffs bring said *Complaint* on behalf of themselves and all Members of the Plaintiff Class described herein, alleging violations of the Amendments XIII and XIV to the United States Constitution.

5.    Just as for all persons committed to the custody of the Minnesota Department of Human Services, Plaintiffs were originally within the coverage of *Minn. Stat.* § 246.01, Subd. 1a, defining "patient" as a person admitted to the Minnesota Sex Offender Program or subject to a hold order for the purposes of assessment, diagnosis, care, treatment, supervision, or other services provided by MSOP. (See former *Minn. Stat.* § 253B.02, Subd. 15).  More recently, this designation was legislatively changed in the case of MSOP patients to "clients", without any change in factual circumstances.  In light of the purely cosmetic, meaningless nature of this change, Plaintiffs refer to themselves herein as "patients".

6.     Specifically, Plaintiffs allege that the Defendants herein, in their respective official and individual capacities, have refused to pay to Plaintiffs the minimum wage to which Plaintiffs are entitled under 29 *U.S.C.* § 206 for work performed in employment by Defendants Minnesota State-Operated Services, Minnesota State Industries, Minnesota Sex Offender Program, Minnesota Department of Human Services, and the State of Minnesota, instead paying a wage to Plaintiffs for their work in said employment of exactly half that mandatory minimum wage.

7.     Defendants herein meanwhile acknowledge the applicability of the aforesaid statutory minimum wage to wages paid to those committed to the Minnesota Security Hospital and to those inhabiting regional treatment centers, all as operated by Defendant Minnesota Department of Human Services or by Defendant State of Minnesota, as all such employment is administered by Defendants Minnesota State-Operated Services and/or Minnesota State Industries, and said Defendants pay to those civilly committed persons (hereinafter, "CCP(s)") as workers the mandatory minimum wage under said federal statute.  In all relevant ways, Plaintiffs are similarly situated as to their employment as are said other CCP-workers.  Therefore, the aforesaid refusal by Defendants to pay said mandatory minimum wage deprives Plaintiffs of Equal Protection of the Laws, as is required by Section 1 of Amendment XIV to the United States Constitution.  Plaintiffs also allege, *infra*, violation of the Thirteenth Amendment and additional violations of the Fourteenth Amendment.

8.     Plaintiffs further allege: (a) that Defendants herein now continue to deny to Plaintiffs the mandatory minimum wage required by the aforesaid federal statute under circumstances that not only violate said statute but also violate Plaintiffs' rights under the Thirteenth and Fourteenth Amendments as aforesaid; and (b) that, unless restrained and enjoined by this Court, said Defendants will continue to do so indefinitely into the future.

9.     Representative Plaintiffs seek, on behalf of themselves and all Class Plaintiffs described in this *Collective and Class Action Complaint*, injunctive relief to end the violation of the United States Constitution based on the Defendants' actions in their official and/or individual capacities in violation of the constitutional rights of Plaintiffs in this action, to restore the rights and circumstances of Plaintiffs to their *status quo ante* said violations, and otherwise to remediate in equity said violations.  Plaintiffs also seek actual and statutory liquidated damages based on the Defendants' actions to violate Plaintiffs' statutory and constitutional rights and, as to said constitutional violation, punitive damages as well.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 *U.S.C.* §§ 1331 and 1343(a)(3), 29 *U.S.C.* § 216, and 42 U.S.C. §§ 1981a and 1983.  Venue in this Court is proper pursuant to 28 *U.S.C.* § 1391 because the acts and omissions giving rise to these claims occurred, now continue to occur, and will continue to occur in the future, all within the State of Minnesota, and upon information and belief, each Defendant resides in the State of Minnesota.

## DECLARATORY AND INJUNCTIVE RELIEF

11.     This Court has authority to grant declaratory relief pursuant to 28 U.S.C. § 2201 as an actual controversy exists regarding the rights, privileges, and immunities to which the Plaintiffs are entitled while committed to the care and custody of the State of Minnesota. Pursuant to 28 *U.S.C.* § 2202, this Court has authority to grant injunctive and other necessary and proper relief as to Count II.

## NAMED PARTIES

### I.   Plaintiffs

12.   Named Plaintiff David Le Roy Gamble, Jr.(hereinafter "David Gamble" or "Gamble") is currently civilly committed to and confined in the custody of MSOP at the MSOP facility at Moose Lake, Minnesota for an indeterminate period of time.  On December 15, 2009, Gamble was released from prison on his "projected release date" ("PRD") and transported to the MSOP-Moose Lake facility ("MSOP-ML"), where he has been detained to date hereof.  Since Gamble's PRD, Gamble's sentence to the Department of Corrections has expired, and he is no longer subject to supervision by or the authority of the Minnesota Department of Corrections. Gamble started working under "Vocational Placement" in the "Patient Pay Program" of MSOP in or about May or June, 2010.  Since that time Gamble has been employed, more or less consistently, through that Patient Pay Program.  Plaintiff Gamble has been, now continues to be, and will continue to be injured by the acts and omissions of Defendants alleged in this *Complaint*.

13.   Named Plaintiff Cyrus Patrick Gladden II (hereinafter "Cyrus Gladden" or "Gladden") is currently civilly committed to and confined in the custody of MSOP at the MSOP-ML facility for an indefinite period of time.  In the incarceration that immediately preceded Plaintiff Gladden's confinement in said MSOP, Gladden's "supervised release date" ("SRD") occurred on April 14, 2014.  However, on that date Gladden was transported to MSOP-ML, where he has been detained to date hereof pursuant to a judgment of civil commitment.  Gladden started working under "Vocational Placement" in the "Patient Pay Program" of MSOP on or about June 1, 2014.  Since that time Gladden has been employed consistently through that Patient Pay Program.  Plaintiff Gladden has been, now continues to be, and will continue to be injured by the acts and omissions of Defendants alleged in this *Complaint*.

14. Named Plaintiff Jerrad William Wailand (hereinafter "Jerrad Wailand" or "Wailand") is currently civilly committed to and confined in the custody of MSOP at the MSOP-ML facility for an indefinite period of time. In the incarceration that immediately preceded Plaintiff Wailand's confinement in said MSOP, Wailand's "supervised release date" ("SRD") occurred on April 21, 2008. However, on that date Wailand was transported to the MSOP facility at St. Peter, MN ("MSOP-SP"), and on February 2, 2009 Wailand was transferred to MSOP-ML, where he has been detained to date hereof pursuant to a judgment of civil commitment. Wailand started working under "Vocational Placement" in the "Patient Pay Program" of MSOP around the end of November or early December, 2008. Since that time Wailand has been employed most of the time through that Patient Pay Program. Wailand's employment through the Patient Pay Program began before Government Entity Defendants started confiscating 50 percent of the minimum wages previously payable to employees in that Patient Pay Program. Nonetheless, when that confiscation began, Wailand's wages were halved (to half of the minimum wage rate). Plaintiff Wailand has been, now continues to be, and will continue to be injured by the acts and omissions of Defendants alleged in this *Complaint*.

15. Named Plaintiff Clarence Antonia Washington (hereinafter "Clarence Washington" or "Washington") is currently civilly committed to and confined in the custody of MSOP at the MSOP-ML facility for an indefinite period of time. In the incarceration that most immediately preceded Plaintiff Washington's confinement in said MSOP, Washington's "supervised release date" ("SRD") occurred on August 30, 2007. However, on that date Washington was transported to MSOP-SP. While at MSOP-SP, Washington was employed in the aforesaid Patient Pay Program from October 2007 until July 2008. Washington was then transferred to MSOP-ML, where he has been detained to date hereof pursuant to a judgment of civil commitment. Since that time Washington has been employed most of the time through that

Patient Pay Program. Washington's employment through the Patient Pay Program began before Government Entity Defendants started confiscating 50 percent of the minimum wages previously payable to employees in that Patient Pay Program. Nonetheless, when that confiscation began, Washington's wages were halved (to half of the minimum wage rate). Plaintiff Washington has been, now continues to be, and will continue to be injured by the acts and omissions of Defendants alleged in this *Complaint*.

16.     Named Plaintiff David James Jannetta (hereinafter "David Jannetta" or "Jannetta") is currently civilly committed to and confined in the custody of MSOP at the MSOP-ML facility for an indefinite period of time. In the incarceration that most immediately preceded Plaintiff Jannetta's confinement in said MSOP, Jannetta's "supervised release date" ("SRD") occurred on March 8, 2007. However, on that date Jannetta was transported to MSOP-SP. While at MSOP-SP, Jannetta was employed in the aforesaid Patient Pay Program from April or May 2007 until August 2007. Jannetta was then transferred to the MSOP-Moose Lake Annex facility, and ultimately was transferred to the MSOP-ML facility's Main Building in May 2008, where he has been detained to date hereof pursuant to a judgment of civil commitment. At MSOP-ML, Jannetta started working in the Patient Pay Program around May 2008. Since that time Jannetta has been employed most of the time through that Patient Pay Program. Jannetta's employment through the Patient Pay Program began before Government Entity Defendants started confiscating 50 percent of the minimum wages previously payable to employees in that Patient Pay Program. Nonetheless, when that confiscation began, Jannetta's wages were halved (to half of the minimum wage rate). Plaintiff Jannetta has been, now continues to be, and will continue to be injured by the acts and omissions of Defendants alleged in this *Complaint*.

## II.    Defendants

### A. Governmental Entity Defendants

17.    Defendant Minnesota State-Operated Services (MSOS) is a body corporate and politic of the State of Minnesota that, at all material times had the statutory obligation to pay, and in fact paid wages to CCPs confined in MSOP who agreed to work as employees of either MSI and/or MSOP and to be paid wages for such work.

18.    Defendant Minnesota State Industries ("MSI") is a body corporate and politic of the State of Minnesota that, at all material times, hired and employed some CCPs confined in MSOP who agreed to work for and were hired by MSI as its employees and to be paid wages for such work.

19.    Defendant Minnesota Sex Offender Program ("MSOP") is a body corporate and politic of the State of Minnesota that, at all material times, hired and employed some CCPs covered by the immediately preceding paragraph at times when they were not working for MSI, and hired and employed all other CCPs confined in MSOP, in either case who agreed to work for and were hired by MSOP as its employees and to be paid wages for such work.

20.    Defendant Department of Human Services of the State of Minnesota ("MNDHS") is a body corporate and politic of the State of Minnesota and is the superior administrative entity governing said MSOP.  In that capacity, at all material times, it hired and employed some CCPs of MSOP covered by the immediately preceding paragraph, at times when they were not working for MSI, and hired and employed all other CCPs of MSOP in either case who agreed to work for MSOP as its employees and to be paid wages for such work.  Also, in said capacity of the superior administrative entity governing said MSOP, at all relevant times, MNDHS permitted and approved the policy of said MSOP and of said MSI and of said MSOS to hire and to pay CCPs of said MSOP as employees at wage rates at 50% of the federally required minimum wage rate set by 29 *U.S.C.* § 206.

21.    Defendant State of Minnesota is a body corporate and politic that, by virtue of *Minn. Stat.* § 1.05, has waived its Eleventh Amendment immunity from suits under 29 *U.S.C.* § 206, *inter alia*, and has thereby authorized suits of this type against said Defendant State of Minnesota.  By legislation codified at *Minn. Stat.* § 246B.06, said Defendant has purported to authorize all other Defendants herein to ignore said federal minimum wage requirement as to Plaintiffs.

B.  Individual Defendants

22.    Defendant Shelby Richardson is the Executive Director of MSOP.  In that capacity, Defendant Richardson determines and administers the policies, procedures, and practices of MSOP, including its policies and practices as to employment and wages of MSOP CCPs as MSOP employees.  Upon information and belief, Defendant Richardson, acting in her official and individual capacities, has been directly involved in the violations of Plaintiffs' statutory and constitutional rights alleged herein.

23.    Defendant Emily Johnson Piper is the Commissioner of Defendant Minnesota Department of Human Services.  In that capacity, Defendant Piper oversees the policies, procedures, and practices of MSOP, including its policies and practices as to employment and wages of MSOP CCPs as MSOP employees.  Upon information and belief, acting in her official and individual capacities, Defendant Piper has been directly involved in the violations of Plaintiffs' statutory and constitutional rights alleged herein.

24.    Defendants John and Jane Does 1-20 (as unknown individuals), are officials and/or employees of any of the "Governmental Entity Defendants" identified in Paragraphs 17 through 21 above.  Upon information and belief, each of these Defendants, acting in his or her official and individual capacities, has been directly involved in the violations of Plaintiffs' statutory and constitutional rights alleged herein.

25.  In all respects material to this *Complaint*, all Individual Defendants acted under the color of law and under the color of their authority as public officials, employees, and contractors, as respectively alleged above.

26.  In all respects material to this action, all Individual Defendants acted within the scope of their office, employment, or contract, but exceeded the scope of their official capacity.

## COLLECTIVE ACTION ALLEGATIONS

27.  The Collective Plaintiffs bring Count I of this action on behalf of themselves pursuant to the Fair Labor Standards Act ("FLSA") for actual and statutory liquidated damages to redress Defendants' refusal to pay to Collective Plaintiffs the minimum wage required under the FLSA. Each Collective Plaintiff has been unlawfully deprived of such required minimum wage payments, and has executed a consent to become a party plaintiff in this action to recoup his portion of such aggregate damages. Therefore, this collective action is within the authorization of 29 U.S.C. § 216 (b).

## CLASS ACTION ALLEGATIONS

28.  The Representative Plaintiffs bring Counts II through V of this action on behalf of themselves and Class Plaintiffs similarly situated pursuant to Rules 23(a), (b)(1)(B), and (b)(2) of the *Federal Rules of Civil Procedure*, seeking equitable and injunctive relief on behalf of the following class (the "Equitable Relief Class"), defined as:

All persons who, under color of law, are currently in the custody of the Defendant MNDHS who are or were confined/hospitalized in MSOP facilities at either: 1111 Highway 73, Moose Lake, MN 55767, or 100 Freeman Drive, St. Peter, MN 56082 and who, while in said custody and confinement/hospitalization, either: (a) have been employed by any of the Governmental Entity Defendants identified in Paragraphs 17 through 21, *supra* (Subclass (A)); or (b) have been convinced not to accept or not to

apply for a position as a patient-worker within MSOP by reason of any one or more of the following: (i) the requirement that one have previously provided unpaid labor to MSOP (Subclass B1); (ii) the requirement that one assert to the Internal Revenue Service that one is performing labor as an independent contractor, even though such assertion is legally untrue (Subclass B2); (iii) the requirement that, while thus employed for pay, one provide one or more additional hours of unpaid labor to MSOP (Subclass B3); (iv) the requirement that one submit to garnishment of one's minimum wage without procedural due process (Subclass B4); and/or (c) the effective pay rate paid to patient workers within MSOP of half of the federally mandated minimum wage rate (Subclass B4).

29.     This Equitable Relief Class satisfies the requirements of *Fed. R. Civ. P.* 23(b)(2) because, as set forth herein, Defendants have acted and/or refused to act on grounds that apply generally to Representative Plaintiffs and the Class members, thereby warranting appropriate injunctive and/or declaratory relief respecting the Class as a whole.

30.     Plaintiffs also bring this action on behalf of themselves and the Class members pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking actual or nominal damages for the constitutional claim(s) of any of Counts II through V on behalf of the following class ("Damages Class"):

All Representative Plaintiffs and Class Plaintiffs in the "Equitable Relief Class," *supra*, who have sustained actual or nominal damages through the actions and omissions of any of the Governmental Entity Defendants or of any of the Individual Defendants.

31.     Each of these two classes (collectively, the "Plaintiff Class" or the "Class") satisfy each requirement of *Federal Rules of Civil Procedure* (hereinafter "*Fed. R. Civ. P.*") Rule 23(a) and (b)(1)(B) and (b)(2), as more specifically alleged in the following paragraphs of this section of this *Collective and Class Action Complaint.*

32.     The Plaintiff Class satisfies the requirements of *Fed. R. Civ. P.* 23(b)(2) because, as set forth herein, Defendants have acted and/or refused to act on grounds that apply generally to Representative Plaintiffs and the Class members, thereby warranting appropriate injunctive and/or declaratory relief respecting the Class as a whole.

33.     Representative Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other Class Plaintiffs. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other Class Plaintiffs.

34.     For commonality purposes, the factor that unifies all of said subclasses (hereinafter collectively "the Class") is that persons in the Class have been subjected to deprivation of at least a portion of their rightful wages for such employment as patient-workers, whether for work performed or in employment positions either not offered to them or not applied for or accepted by them, in violation of the Equal Protection guarantee of the Fourteenth Amendment to the *United States Constitution.*

35.     The claims of the respective Representative Plaintiffs are typical of the claims of the Plaintiff Class, and the Representative Plaintiffs will fairly and adequately protect the interests of the Plaintiff Class.  The Representative Plaintiffs and the Plaintiff Class are similarly affected by Defendant's wrongful conduct.

36.     Numerosity and Unascertainability of Individual Plaintiffs in the Class.

   (a)     The Class satisfies the requirement of Rule 23(a)(1) because the Class is so numerous, and its members not feasibly identifiable, such that joinder of all members is impracticable.

   (b)     The Named Plaintiffs believe the number of members of the Plaintiff Class is in excess of 400 persons currently committed to MSOP, and including the estates of some unknown number among the approximately

56 individuals formerly committed to MSOP who have died during said commitment.

(c)     Because no one subject to sex offender commitment in Minnesota has been granted an unconditional release ("discharge") from such commitment, and only two persons alive have been granted a "provisional discharge" to date, and because the number of persons who, as such committed individuals, have been and now are employees of the aforesaid Government Entity Defendants while in that committed status continues to grow unabated and will continue to grow in the future, the total number of individuals in the Plaintiff Class will continue to grow indefinitely.

37.     <u>Common Questions of Law and Fact</u>.  The Plaintiff Class satisfies the requirement of Rule 23(a)(2) because common questions of law and fact exist as to all Class Members (including Named Plaintiffs).  Such questions of law and fact common to the Class include, but are not limited to:

(a)     Whether by refusing to pay the federal minimum wage to Plaintiffs, Defendants have violated 29 *U.S.C.* § 206 and thereby incurred liability to Plaintiffs?

(b)     Whether by refusing to pay the federal minimum wage to Plaintiffs Defendants have deprived and are depriving Plaintiffs of their right to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution?

38.     <u>Typicality of Class Claims and Protection of Class Interests</u>.  The Class also satisfies the requirement of Rule 23(a)(3) and (4) because claims of the Named Plaintiffs are typical of the claims of the Class specified in this *Collective and Class Action Complaint*.  The Plaintiffs are similarly affected by Defendants' wrongful conduct.  As to injuries of Named Plaintiffs, all Defendants are juridically linked in relationship to the subject matter of this class action, such that a single resolution of the dispute presented by this *Collective and Class Action Complaint* would be expeditious and is preferable to multiple individual actions.

39.     Named Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the Class.  Named Plaintiffs' interests are coincident with, and not antagonistic to those of the Class.  The Named Plaintiffs will fairly and adequately protect the interests of the Class.  All Named Plaintiff herein, viz., David Gamble, Cyrus Gladden, Jerrad Wailand, Clarence Washington, and David Jannetta, are sufficiently educated to act in the capacity of Named Plaintiff herein to adequately represent the interest of all the Class.

40.     Within the contemplation of Rule 23(b)(1)(A), prosecution of separate actions by individual Named Plaintiffs and individual Class Members would create the risk of:

(a)     Inconsistent and varying adjudications;

(b)     Dramatically varying opportunities for presentation of the material facts and of apt legal arguments;

(c)     Establishing incorrectly presumed precedential impact on one ruling to another case due to such varying presentations of fact and due to incorrect or incomplete understanding by such unrepresented individual plaintiffs of the legal theories underlying each of the aforementioned claims as those theories apply to such material facts; and

(d)     Establishing incompatible standards of conduct for Defendants,

and would frustrate the efforts of this Court to efficiently resolve these

claims.

41.     Within the contemplation of Rule 23(b)(1)(B), adjudication with respect to individual class members would, as a practical matter, be dispositive of the interests of the other members not parties to those individual adjudications, and would also separately in any event substantially impair or impede their ability to protect their interests.

42.     Within the contemplation of Rule 23(b)(2), Defendants have acted and refused to act on grounds that apply generally to the Class, so that final injunctive relief is appropriate respecting the Class as a whole.

43.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy within the contemplation of Rule 23(b)(3) in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, and the enormous consumption of Court resources that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

44.     Also within the contemplation of Rule 23(b)(3), the questions of law and fact common to Plaintiffs predominate over any questions affecting only individual Plaintiff Class members.

45.     Also within the contemplation of Rule 23(b)(3), the benefits of proceeding through the class mechanism, including providing injured persons with a method for obtaining

~ 15 ~

injunctive relief for claims that might not be practicable to pursue individually, particularly in the absence of appointed counsel and of any court funding for scientific evidence and expert testimony, substantially outweighing any difficulties that may arise in management of this class action.

46.   Proper and sufficient notice of this action may be provided to Class Members as follows:

    (a)   Through actual notice to committed Class Members currently detained in MSOP facilities via direct mail and also via the "MSOP Client Computer Network"; and

    (b)   Through actual notice to the two extant committed Members of the Plaintiff Class now on "provisional release" status via direct mail.

47.   Representative Plaintiffs and Plaintiff Class members have suffered harm and actual or nominal damages as a result of Defendants' wrongful conduct as alleged herein. Absent representative action, Representative Plaintiffs and Plaintiff Class members will continue to suffer losses, thereby allowing Defendants' violation of law to proceed without remedy.

## FACTS

### I.   Plaintiffs Are "Employees" within the Meaning of the Fair Labor Standards Act.

48.   The *Fair Labor Standards Act* (hereinafter, the "*FLSA*"), 29 U.S.C. 201-219, establishes a federal minimum wage. See *id.* § 206(a).

49.   The applicability of the federal minimum wage requirement in this case turns solely on the meaning of the terms "employer" and "employee."

50.   Under 29 *U.S.C.* § 203 (e)(1), "Except as provided in paragraph (2), (3), and (4) the term 'employee' means any individual employed by an employer", except as specifically exempted by provided in paragraphs (2), (3), and (4) of that subsection.   Sex offenders under commitment are not exempted under Paragraph (2) through (4).

51.     Here are the significant facts of the MSOP patient-worker arrangement, all of which indicate an employer-employee relationship:

a.  MSOP exercises an unrestricted right to discharge any patient-worker from any job at any time without cause.  No unemployment compensation is available in the event of discharge without cause.

b.  MSOP holds out a given job to a given patient-worker on a 'take-it-or-leave-it' basis.

c.  MSOP patient-workers may not work for any person or entity other than MSOP.

d.  MSOP dictates to each patient-worker the hours to be worked and days each week when such hours are to be worked.

e.  No such patient-worker may change the hours of work, days of work, or duties to be performed in such assigned jobs or unilaterally change from one specific job to another.

f.  Nor can any patient worker work on a 'piece-work' basis or be paid simply for any result achieved.

g.  MSOP specifies the exact duties to be performed in each given job held by a patient-worker, and dictates the means by which each such duty shall be performed and the standard(s) by which satisfactory performance shall be judged.  No patient-worker can use any methods of his own choosing to perform any given assigned job.

h.  MSOP reserves and frequently exercises the right to change, add, or reduce hours of work and to change such duties of a given job and/or the standards of performance of same.

i.  Personal performance is required of each patient-worker; no patient-worker can hire any substitute or replacement, or subcontract the assigned work to anyone else.

j.  All tools and required materials are furnished to such patient-workers by MSOP, and their use by each patient-worker in the manner prescribed by MSOP is mandatory.

k.  None of the jobs held out by MSOP to patient-workers involve any recognized self-employed trade or calling.

l.  MSOP provides only one hour of on-the-job training before employing a given patient-worker, concerning the use of specific cleaning chemicals and tools provided by MSOP to perform janitorial cleaning.

m.  Only similarly trivial on-the-job training is provided to patient-workers who are later selected for jobs other than cleaning a given patient's own living unit.  Again, such subsequent training assumes the general ability and skills of the given patient-worker, and only focuses on performance of the specific job with the specific tools provided by, and in the particular manners prescribed by MSOP.

n.  As a precondition of employment, each patient-worker hired must be capable of performing the duties of the job assigned.  Under no view can this be claimed to be a 'sheltered workshop.'

o.  In all respects, MSOP exercises sole control over all aspects of the work relationship between any given patient-worker and MSOP.  Nothing about that relationship can be rationally described as consistent with an independent contractor or self-employment relationship.

p.  No MSOP patient-worker has any opportunity for profit or loss through his labor, nor is any investment by any patient worker in MSOP or its facilities possible.

## A. Plaintiffs Are Not Independent Contractors.

52.  There is no contention in this case that Plaintiffs are merely "independent contractors", nor could any such assertion be rationally made.  29 *U.S.C.* § 203 (g) defines

"employ" as including "to suffer or permit to work." Without dispute, MSOP permitted its patient-workers to work, and thus employed them for purposes of the FLSA. The allegations of each subparagraph in the immediately preceding paragraph confirm that the relationship between Plaintiffs and the Government Entity Defendants herein is not an independent contractor relationship.

## B. MSOP Is a "Public Agency" Conducting "Enterprise" Activities in Commerce within the Coverage of the FLSA.

53.     29 U.S.C. § 203(d) defines an "employer" as specifically including a "public agency." Under § 203 (x), "public agency" is defined as (*inter alia*) "…any agency of …a State…." Confirming this, Subsection 203(r)(2)(C) includes within the definition of "enterprise" work activities "in connection with the activities of the public agency," as being "activities performed for a business purpose."

54.     The activities of each Plaintiff herein as a patient-worker within and for MSOP are performed in connection with that public agency and therefore are performed for a business purpose, within the meaning of that statutory subsection. Hence, as defined in that subsection, these activities with MSOP comprise an "enterprise," as covered by the minimum wage provisions of the FLSA. Because this enterprise is an activity of a public agency, it inherently constitutes an "enterprise engaged in commerce or in the production of goods for commerce" within the definition set forth in Subsection (s)(1)(C) of that statute.

55.     For the purpose of FLSA the Government Entity Defendants are engaged in interstate enterprise, and Plaintiffs are engaged in employment related to the interstate conduct by the Government Entity Defendants. Under 29 U.S.C. § 203(s)(1)(C), the activities of the Government Entity Defendants in which Plaintiffs are employed are activities of a public agency.

## C. No Statutory Exemption Under the *FLSA* Applies to Plaintiffs.

56.    There is no exception in the FLSA for the types of work performed by MSOP patients.    An employer-employee relationship exists between MSOP or Minnesota State Industries, on one hand, and the MSOP patients employed by either within MSOP.

57.    As to state employees, Paragraphs (2)(C)(ii)(I) through (V) sets forth only five specific exemptions, none of which have any conceivable applicability to MSOP patient-employees.    Similarly, Paragraph (3) has no conceivable applicability hereto.    Paragraph (4) addresses only labor that is "volunteered" (with no compensation at all).    Since none of these three sole exceptions apply, Plaintiffs herein clearly are "employees" of either MSOP or of MSI. Therefore, all such MSOP patient-"employees" are covered by FLSA and by its requirements for payment of federal minimum wage rates.

58.    Even more specific to this circumstance, Subsection (r)(2)(A) includes in the same definition "activities performed by any person or persons—(A) "in connection with the operation of a hospital, an institution primarily engaged in the care of the ... mentally ill or defective who reside on the premises of such institutions..." Plaintiffs are legally deemed to be mentally "disordered," a category that is regarded by the Diagnostic and Statistical Manual (Version 5) of the American Psychiatric Association as the functional equivalent of "mental illness."    This is the very bedrock of Plaintiffs' commitments under Minnesota's "Sexually Dangerous Persons" and "Sexually Psychopathic Personalities" legislation.    Were there no mental disorder or other mental illness, Plaintiffs' commitments would be in violation of the substantive due process guarantee of the Fourteenth Amendment to the United States Constitution. Each Plaintiff resided in one of the "institutions" of MSOP when performing work for pay for MSOP or MSI.    Therefore, each Plaintiff qualifies as an employee under the definition in Subsection (r)(2)(A).

59.     None of the exemptions from minimum wage coverage set forth in 29 U.S.C. Sec. 213(a) apply to MSOP patient-employees.  Nor has the Secretary of Labor of the United States issued any "certificate" of exemption as to the employment alleged herein under 29 U.S.C. Sec. 214.  Therefore, minimum wage rates must be paid to MSOP patient-employees.

60.     These services performed by Plaintiffs in their employment by and for the Government Entity Defendants are not part of any treatment plan, nor do they have any rehabilitative role or value.  Plaintiffs are not provided any significant training to perform the tasks of their employment nor do those tasks have any educational or therapeutic value.  None of the jobs held by Plaintiffs for any of the Government Entity Defendants provide any Plaintiff skills that would make him more employable upon re-entering society such as plumbing, electrical, HVAC or other "trades" or any other vocational programs which would afford them meaningful job skills to obtain gainful employment.

**D. Plaintiffs' Services as Patient Workers Satisfy the Test of Performance of Work That Non-Confined State Employees Would Otherwise Be Required to Perform.**

61.     MSOP patient-workers are employed to perform work that would be performed by state employees not confined in MSOP if MSOP patient-workers did not hold positions performing that work.  Examples of the work MSOP patient-workers perform are: (1) residential unit cleaning (janitorial work); (2) all types of positions performing work in the facility kitchen and dining room (from table cleaning and dish washing to food serving, cook positions and other food preparation positions); (3) general facility upkeep positions (hall and commons areas janitorial work, exterior sidewalks and grounds-keeping positions, and horticultural tasks); and (4) a wide range of industrial shop positions, from product assembly to shipping and receiving, and inventory tracking.  These industrial shops operate as state-run profit-making ventures, and could be sited and operated anywhere else, with state employees, rather than MSOP patients. These industrial shops are sited within MSOP to take advantage of comparatively cheap labor by

patients, rather than non-confined state employees -- whose pay rates would be twice or more Plaintiffs' pre-confiscation, rightful minimum-wage rate. The profit made by these shops is used to defray the cost of operation of this facility, in order to make operation of this detention program more politically palatable.

62.     In all these regards, jobs held by MSOP patient-employees are directly comparable to jobs held by MSOP employees who are not MSOP patients. MSOP patients hold jobs that involve tasks that would have to be performed by non-patient MSOP employees if such jobs were not held by MSOP patients.

**E. Plaintiffs' Services as Patient Workers Satisfy the "Consequential Economic Benefit" Test.**

63.     MSOP patients are "employee[s]" and therefore are qualified under FLSA and entitled to its statutory minimum wage.   The services performed by Plaintiffs provide consequential economic benefit to the facility in which Plaintiffs work and are the same type of services which non-committed members of the public would be employed by the Government Entity Defendants to perform were it not for the employment of Plaintiffs instead.  Therefore, under the FLSA and case law pursuant to it, Plaintiffs are entitled to statutory minimum wage provided by the FLSA.

64.     In consequence from the foregoing, Plaintiffs are entitled to the minimum wage per hour prescribed under the FLSA.

**F. Provision by MSOP of Some Basic Needs to Plaintiffs Does Not Exclude Plaintiffs from FLSA Coverage.**

65.     Third, the fact some (not nearly all) basic needs of MSOP patients are provided by MSOP is immaterial to employment coverage by FLSA. Moreover, all MSOP patients are billed a per diem rate for their "cost of care," including the average cost for all such basic needs.

66.     Moreover, among the basic needs not even provided at all by MSOP to its patients are: clothing (including clothing for work needing frequent replacement), underwear, coats, rainwear, shoes, , health-care and personal-hygiene supplies (including soap, shampoo, toothpaste, razors, etc.), and personal electronics (including TVs, radios, stereos, portable music players, and DVD/Blu-Ray players), and often, hearing aids and other medical devices. Additionally, patients must buy their own envelopes and paper for printing and for writing and pay for all postage for outgoing mail and pay the exorbitant cost of phone calls from either MSOP facility to any phone number except for "legal calls" to attorneys on a limited list compiled and updated by MSOP.

67.     In sum, MSOP patients, including all Plaintiffs, must pay cash for a substantial portion of their living costs; additionally, they are billed monthly for a per diem averaged allocated cost of MSOP operation.  Therefore, in no meaningful sense can it be said that MSOP actually does provide for the needs of its patients.  It follows nothing in this arrangement for paying the cost of care is any excuse whatsoever not to pay Plaintiffs the federally mandated minimum wage.

**G. Any Claim That Plaintiffs Are Merely Trainees Fails to Exclude Plaintiffs from the Minimum Wage Provisions of the FLSA Because Plaintiffs' Labors Serve the Employer's Interest and Are an Essential Part of the Activities of MSOP and MSI.**

68.     The Fair Labor Standards Act covers trainees, beginners, apprentices, or learners, if they are employed to work for an employer for compensation.  Where trainees' labors serve the employer's interest and are an essential part of employer's activities, a trainee is considered an employee for purposes of the FLSA.  Because MSOP patient-employees work for pay and perform services that are an essential part of the activities of either MSI or MSOP itself, all Plaintiffs are covered under the FLSA.

69.     Similarly, there are no "extended treatment services" provided to MSOP patients who are employed by MSI or by MSOP, and thus, no such deducted sums pay for any such fictional services.  Thus, the true reason why MSI is directed by Minn. Stat. § 246B.06, subd. 1(a) to preferentially hire MSOP patients for jobs is to reduce the cost of operating MSI and MSOP generally ("for the primary purpose of sustaining and ensuring Minnesota State Industries' self-sufficiency"), not to benefit MSOP patients.

70.     The fact that MSOP patients are confined "for a very, very long time" actually shows that a claimed aim at providing work-training (as preparation for some mythical release date in the near future) is a transparent fraud.  Both as to such jobs performed by MSOP patients for MSOP itself and as to those they alternatively perform for MSI, there is no significant training or education.  An example is the sole, one-hour "training" for a residential-unit cleaner position, consisting of mere explanation of the cleaning chemicals to be used in the work area and simple safety procedures.

71.     Patients are selected for jobs based in part on their personal past experiences and knowledge of how to perform the job.  Training otherwise simply consists of telling a newly-hired patient-employee what needs to be done.  Failure to perform the tasks assigned as part of a given job is grounds for termination.  No significant training is provided to any patient-employee who fails to perform an assigned task to expectations.

72.     Failure by an MSOP patient to attend work shifts is grounds for termination, and this policy of termination is enforced with very little leeway.  Thus, there is no significant role of "teaching of proper work habits to the individuals in the Minnesota Sex Offender Program" except by punishment of being terminated from employment.

**H. Any Claim That Plaintiffs Work Only as Part of Some Alleged "Vocational Work Program" Is Specious.**

73.    *Minnesota Statute* §246B.05, establishes what it calls a "vocational work program" in MSOP.  However, this program only covers employment by Defendant MSI.  As alleged above, MSI only operates the "industry" operation within MSOP.  Actually, the majority of MSOP patient-employees are employed outside of MSI and thus, outside of that vocational work program, in positions involved in the operations of MSOP itself, such as cleaning of residential units, corridor, and other commons-areas, and/or kitchen operations.

74.    As a claimed exemption from federal income tax withholding, MSOP attempts to rely on Minnesota Statutes, Section 246B.06, Subdivision 7, which states: "Status of civilly committed sex offenders.  Civilly committed sex offenders participating in the vocational work program are not employees of the Minnesota sex offender program, the Department of Human Services, or the state,...."

75.    Subdivision 6 of that statute adds that:

"...[T]he commissioner of human services has the discretion to set the pay rate for individuals participating in the vocational work program. The commissioner has the authority to retain up to 50 percent of any payments made to an individual participating in the vocational work program for the purpose of reducing state costs associated with operating the Minnesota sex offender program."

76.    MSOP relies upon this statutory subdivision, insisting it is not subject to either state or federal minimum wage laws.

**I. Plaintiffs Are Not in Need of, and Are Not Receiving "Vocational Rehabilitation" through Their Positions as Patient-Workers.**

77.    MSOP patients who work are not handicapped, debilitated, or dysfunctional in any vocational respect.  MSOP patients who are eligible to work and who are hired are entirely

able-bodied and entirely mentally functional, just as any average worker outside of this facility is. Therefore, in no actual sense are MSOP patient-workers being "vocationally rehabilitated", nor is this facility, or any part thereof a "sheltered workshop." MSOP patient-workers receive no significant amount of pre-employment or on-the-job training, and are not guided in the performance of assigned tasks (as would be the case in such a 'sheltered workshop').

78.     In sum, there is nothing even remotely conceivable as "therapeutic" about Plaintiffs' employment by MSOP/State Operated Services in this patient-worker program. Nor can it reasonably be said that there is any 'vocationally rehabilitative' aspect to this work program, any more than experience at any job prepares one for being hired into a somewhat more advanced position in the same general field of work. Beyond the single hour of orientation to tools and chemicals have already mentioned *supra*, there is no ongoing training or coaching in how to perform any given task. Every patient-worker hired for a given position here is entirely capable of performing the tasks of that position after nothing more than that short orientation. Plaintiffs are simply ordinary employees.

79.     MSOP's use of such phrases as "vocational work program" and "vocational rehabilitation" are simply red herrings to obfuscate the true, plain and simple employment relationship, in a deliberate effort to dodge the federal obligation under the FLSA to pay minimum wage rate to all patient-workers and the further obligation to engage in federal income tax withholding as to each such employed patient.

II.     **Defendants' Program of Confiscation of Half of Plaintiffs' Rightful Minimum Wages and Disregard of Withholding for Federal Income Taxes upon Such Wages and of Withholding Employer's Contribution toward Social Security (FICA) Accounts of Plaintiffs.**

80.     On or about September 9, 2009, MNDHS and MSOP initiated policies and procedures permitting reduction of an MSOP patient's wages earned at the facility in the amount of fifty (50) percent and up to the amount of one hundred (100) percent. As a result of this

amendment, Plaintiffs have been and are subjected to a loss of earned income by way of payroll deduction in the amount of fifty (50) percent of all wages thus earned.

81.     More generally, Minn. Stat. § 246B.06 subd. 6 allows the Commissioner of Human Services to deduct and retain "up to 50 percent of any payments made to an individual participating in the [MSOP] vocational work program for the purpose of reducing state costs associated with operating the Minnesota sex offender program." However, those costs are already aggregated and prorated to each MSOP patient per diem and are billed to each of them. No deduction from such billing is made for such wage deductions taken from the patient-employee in question.

82.     The true destination of all deductions from the wages of all MSOP patient-employees, whether employed by MSI or instead by MSOP itself is a defrayment of the losses to MSI of its operation of the "industry shops" in MSOP. Those shops are extremely inefficient and noncompetitive, producing comparatively little saleable product and supporting a bloated staff of non-patients.

83.     The MSI program overall has the same problem. MSI survives only by reason of captive contracting which it is statutorily allowed to engage in with agencies of the State of Minnesota for provisions of its products. Even so, MSI in MSOP has annual operating losses of approximately $1.75 million. Of this, about a half million dollars per year are paid for by the wage deductions at issue herein.

84.     To date, MSOP continues deducting fifty percent (50%) of the wages earned by Plaintiffs.

85.     No tax withholdings or Social Security (FICA) wage deductions are made by the official employer of all MSOP patient-workers (Defendant Minnesota "State-Operated Services"), nor does it submit any employer Social Security contributions or any federal

unemployment tax payments as to wages earned by Plaintiffs. No Affordable Health Care plan is made available to Plaintiffs by Defendants. Medical expenses are paid by Medical Assistance via local HMOs as Medical Assistance providers. In this last connection, the federal government is thereby made to pay for our medical costs.

86.     By claiming that its patient workers are not employees, MSOP evades the income tax withholding requirement of the Internal Revenue Code as to income tax and Social Security contributions, as well as the need to contribute the employers' portion of that Social Security contribution. This latter refusal as to Social Security withholding and employer contribution deprives each patient-worker of Social Security quarterly work credits necessary to qualify for, and to maximize a patient-worker's Social Security retirement benefit. In order to receive such quarterly credit, one must have Social Security contributions made by both employer and employee.

87.     Each Plaintiff herein has suffered a financial loss as a result of the amendment to the underlying statute and this policy initiated by MNDHS and MSOP.

### III.   The Availability of Damages Relief under the FLSA for Defendants' Failure to Pay the Minimum Wage to Plaintiffs

88.     Insofar as pertinent herein, 29 *U.S.C.* § 216 (b) provides as follows:

"Any employer who violates the provisions of section 6 or section 7 of this Act [29 U.S.C. § 206 or 207] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, ...and in an additional equal amount as liquidated damages.... An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The

court in such action shall, <u>in addition</u> to any judgment awarded to the plaintiff or plaintiffs, <u>allow a reasonable attorney's fee to be paid by the defendant</u>, and costs of the action...."

89.     As shown by all preceding allegations of this <u>Facts</u> Section of this *Complaint*, the legislation and policies of the Government Entity Defendants and the alleged acts and omissions of the Individual Defendants herein have violated 29 U.S.C. § 206.  Therefore, under Section 216, immediately *supra*, Plaintiffs are entitled to recover from Defendants all such unpaid portions of their respective minimum wages under the FLSA and the matching liquidated damages, as well as reasonable attorney fees.

**IV.   The Failure to Provide Equal Protection of the Laws to Plaintiffs Comprised by Payment of the FLSA Minimum Wage Rate to Those Committed under Other Grounds in the Minnesota Civil Commitment and Treatment Act But Refusal to Pay That Same Wage Rate to Plaintiffs Committed under the "Sexually Dangerous Persons" and/or the "Sexually Psychopathic Personality" Grounds of that Same Act**

90.     Other categories of persons civilly committed under the Minnesota Civil Commitment and Treatment Act (including those ruled to be "mentally ill and dangerous") are not subject to a 50% deduction from the FLSA minimum wage or to any comparable deduction of any percentage.  Minn. Stat. § 246B.06 subd. 6 discriminates against those committed as SDP/SPP in this regard by depriving Plaintiffs of this portion of their rightful FLSA minimum wage without any rational basis for said discrimination, depriving Plaintiffs of equal protection of the laws, in violation of the Fourteenth Amendment.

**V.   Defendants' Confiscation of Half of Plaintiffs' FLSA Minimum Wages Is Simply Garnishment of Wages Without Basis in Any Civil Judgment upon an Underlying Debt, Denying Procedural Due Process to Plaintiffs in Violation of the Fourteenth Amendment.**

91.     MSOP claims, based on another Minnesota statute, that its patients are liable for the cost of operation of MSOP (not just their individual treatment costs).  In making this deduction toward that cost, MSOP has not obtained any judicial judgment or sought any such

judgment as to that claim for costs of care, nor does it seek judicial execution procedure such as garnishment. This deprived Plaintiffs of procedural due process under the principle enunciated in *Sniadach v. Family Finance Corporation Of Bay View et al.*, 395 US 337, 23 L Ed 2d 349, 89 S Ct 1820 (1969). As a direct and proximate result of this illegal garnishment, Plaintiffs have suffered the loss of half of their rightful minimum wages.

## VI. Defendants' Extortionate Demand for Free Labor by Plaintiffs as a Condition upon Providing Plaintiffs Employment by the Only Employers Available to Them Violates the FLSA and the Thirteenth and Fourteenth Amendments.

92.    Until very recently, as a pre-condition of being hired for paid employment, MSOP also demanded that its patients perform two hours per week of "volunteer" labor in similar cleaning positions. After being hired into a paid employment position, each employed patient was then also compelled to continue to perform one hour per week of such "volunteer" labor without pay in order to retain those paid hours of employment. These extortionate demands by Defendants required free labor by Plaintiffs as a condition upon being given employment by the only employers available to Plaintiffs, thereby violating the FLSA and inflicting involuntary servitude and a denial of substantive due process upon Plaintiffs, in violation of the Thirteenth and Fourteenth Amendments. As a direct and proximate result of this illegal extortionate conduct by Defendants, Plaintiffs have suffered the loss of their rightful minimum wages for all such hours of labor without pay.

## VII. Defendants' Extortionate Demand That Plaintiffs Fill Out, Sign and File an IRS "W-9" Form Declaring The Signer to be an Independent Contractor Inflicted Involuntary Servitude upon Plaintiffs and Denied Substantive Due Process to Plaintiffs, in Violation of the Thirteenth and Fourteenth Amendments.

93.    Since approximately April, 2014 (long after the initiation of this policy), officials of the vocational division of MSOP have begun to insist, as a condition of being hired for such employment within MSOP, that each patient worker applying for employment in MSOP sign an Internal Revenue Service "W-9" form, thereby declaring oneself to be an independent contractor,

not an employee, and requesting assignment of a taxpayer identification number to the requestor for that purported self-employment.

94.     Many applicants have not understood the legal significance of that form, and have signed it simply because they were asked to.  Other have initially objected, realizing that they are not independent contractors, but instead are employees, yet were told in reply to these objections that signing the form is mandatory, and that not signing means that one will not be hired. However, the FLSA-established federal minimum-wage guarantee cannot be modified by contract.

95.     This extortionate demand by Defendants required relinquishment by Plaintiffs of their status as employees under the FLSA as a condition upon being given employment (falsely styled as independent contracting) by the only employers available to Plaintiffs, thereby violating the FLSA and inflicting involuntary servitude and a denial of substantive due process upon Plaintiffs, in violation of the Thirteenth and Fourteenth Amendments.  As a direct and proximate result of this illegal extortionate conduct by Defendants, Plaintiffs have suffered the loss of their statutory right as employees-in-fact to the minimum wage provided by the FLSA, the right to the federal income "Earned Income" tax credit, and to the Social Security benefits to which they would have been entitled had they been properly treated as employees (including the provision by Government Entity Defendants as their employers of the employer's contribution toward FICA and the withholding and transmittal to the Internal Revenue Service of federal income tax withholding amounts and Plaintiff's portion of said FICA deduction).

## CLAIMS

### Count I

### Violation of 29 *U.S.C.* § 206

96.    Plaintiffs have earned the federal minimum wage specified in the Federal Fair Labor Standards Act as employees within MSOP from 2009 through the date hereof and continue to earn said minimum wage presently.

97.    Defendants have failed and refused to pay said minimum wage to Plaintiffs, instead paying exactly half of that minimum wage rate to Plaintiffs.  By doing so, each Defendant herein has violated, and now continue to violate 29 *U.S.C.* § 206, the minimum wage provision of the *Fair Labor Standards Act* ("*FLSA*").

98.    By reason of this violation of the federal minimum wage requirement, Plaintiffs are entitled to damages in the amount of all such unpaid portions of that federally required minimum wage rate and an equal additional amount as liquidated damages pursuant to in 29 *U.S.C.* § 216(b).  Each Plaintiff herein who is or at any time was an employee as alleged in this *Complaint* has given his consent in writing to become a Plaintiff herein, and each such consent is attached hereto and is hereby filed in this Court.

### Count II
### Deprivation of Equal Protection

99.    The Fourteenth Amendment entitles people to equal protection under the law. Plaintiffs bring this Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983.

100.    The aforesaid refusal by Defendants to pay the aforesaid federally-required minimum wage to Plaintiffs for work performed by them in their employment deprives Plaintiffs of equal protection of the laws, in violation of the Fourteenth Amendment to the United States *Constitution*, in that they are being treated differently without rational basis as compared to those held in other state hospitals and deemed to be "mentally ill."

101.    Plaintiffs have been, are now, and will continue to be subjected to, and injured by this deprivation of equal protection and have suffered, are now continuing to suffer damages as a direct and proximate result of Defendants' acts and omissions, as specifically set forth within this *Complaint*.

## Count III

### Deprivation of Procedural Due Process by Garnishment without Civil Judgment

102.    The Fourteenth Amendment entitles people to procedural due process.  Plaintiffs bring this Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983.

103.    The aforesaid confiscation by Defendants of half of Plaintiffs' FLSA minimum wages is simply garnishment of wages without basis in any civil judgment upon an alleged underlying debt, thereby denying procedural due process to Plaintiffs in violation of the Fourteenth Amendment.

104.    Plaintiffs have been, are now, and will continue to be subjected to, and injured by this deprivation of procedural due process and have suffered, are now continuing to suffer damages as a direct and proximate result of Defendants' acts and omissions, as specifically set forth within this *Complaint*.

## Count IV

### Demand for Free Labor as Violation of the FLSA and the Thirteenth and Fourteenth Amendments

105.    The Thirteenth Amendment prohibits imposition of involuntary servitude except as punishment for crime.  Plaintiffs are not under civil commitment to MSOP as punishment for any crime.  The Fourteenth Amendment entitles people to substantive due process.  Plaintiffs bring this Thirteenth and Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983.

106.    The aforesaid extortionate demand by Defendants that Plaintiffs work a certain number of hours of unpaid labor as a condition of obtaining and retaining employment by

Defendants violates the minimum wage requirement of the FLSA. This has imposed involuntary servitude upon Plaintiffs in violation of the Thirteenth Amendment and has denied substantive due process to Plaintiffs in violation of the Fourteenth Amendment.

107.    Plaintiffs have been, are now, and will continue to be subjected to, and injured by this additional violation of 29 U.S.C. Sec. 206, this imposition of involuntary servitude, and this deprivation of substantive due process. Plaintiffs have suffered damages as a direct and proximate result of Defendants' acts and omissions comprising these violations, as specifically set forth within this *Complaint*.

### Count V

### Demand That Plaintiffs Assert to IRS That They Are Independent Contractors as Violation of the Thirteenth and Fourteenth Amendments

108.    The Thirteenth Amendment prohibits imposition of involuntary servitude except as punishment for crime. Plaintiffs are not under civil commitment to MSOP as punishment for any crime. The Fourteenth Amendment entitles people to substantive due process. Plaintiffs bring this Thirteenth and Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983.

109.    The aforesaid extortionate demand by Defendants that Plaintiffs fill out, sign and file an IRS "W-9" Form declaring the signer to be an independent contractor inflicted involuntary servitude upon Plaintiffs and denied substantive due process to Plaintiffs, in violation of the Thirteenth and Fourteenth Amendments.

110.    Plaintiffs have been, are now, and will continue to be subjected to, and injured by this imposition of involuntary servitude and deprivation of substantive due process and have suffered, and are now continuing to suffer damages as a direct and proximate result of Defendants' acts and omissions comprising these violations, as specifically set forth within this *Complaint*.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request relief as follows:

(a)    That the unlawful conduct alleged herein be declared to be illegal and in violation of the federal statutory and constitutional law provisions cited in the respective counts herein;

(b)    That, as to Count I, *supra*, the court determine that this action may be maintained as a collective action under 29 U.S.C. § 216, and that all who have executed a written consent to join as plaintiffs herein be declared to be Plaintiffs as to Count I herein;

(c)    That, as to Counts II through V, *supra*, the court determine that this action may be maintained as a class action under Rules 23(b)(2) and 23(b)(3) of the *Federal Rules of Civil Procedure*, and that Named Plaintiffs herein be certified as class representatives;

(d)    That a law firm with experience in both (1) the field of representation of alleged-employee plaintiffs in FLSA-based actions for minimum wage recovery, and (2) the field of representation of class action plaintiffs be appointed as appropriate counsel to represent the Class;

(e)    That Plaintiffs be awarded compensatory damages: (1) the unpaid balance of statutory minimum wages due them plus statutory liquidated damages pursuant to 29 *U.S.C.* 216 (b) in an amount equal to said unpaid balance of statutory minimum wages to date of judgment herein, including interest payments, and (2) a separate sum for damages to the plaintiff class as to Counts II through V for imposition of involuntary servitude and for deprivation of Plaintiffs' rights to equal protection of laws and to substantive and procedural due process as required by the Fourteenth Amendment to the United States Constitution;

(f)     That Defendants be enjoined from engaging in the same or similar practices alleged

        herein;

(g)     That Plaintiffs recover their costs of suit, attorney fees (as provided by 29 *U.S.C.* §

        216 [b]), and expenses as allowed by law; and

(h)     All other relief allowed by law and equity.


Dated:  August 10th, 2016


David Le Roy Gamble, *pro se*
1111 Highway 73
Moose Lake, MN 55767
(not available by telephone or fax)

Cyrus Patrick Gladden II, *pro se*
1111 Highway 73
Moose Lake, MN 55767
(not available by telephone or fax)

David James Jannetta, *pro se*
1111 Highway 73
Moose Lake, MN 55767
(not available by telephone or fax)

Jerrad William Wailand, *pro se*
1111 Highway 73
Moose Lake, MN 55767
(not available by telephone or fax)

Clarence Antonia Washington, *pro se*
1111 Highway 73
Moose Lake, MN 55767
(not available by telephone or fax)