## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

David Le Roy Gamble, Jr.; Cyrus Patrick
Gladden II; David James Jannetta; Jerrad
William Wailand; and Clarence Antonia
Washington,

          Plaintiffs,

v.

Minnesota State-Operated Services,
Minnesota State Industries, Minnesota Sex
Offender Program, Department of
Human Services, the State of Minnesota,
Emily Johnson Piper, Lucinda Jesson,
Dennis Benson, Nancy A. Johnston,
Shelby Richardson, Shirley Jacobson,
"Charlie" Hoffman, and John and Jane
Does 1-20,

          Defendants.

Case No. 16-cv-02720-JRT-KMM

**REPORT AND
RECOMMENDATION**

     This matter is before the Court on the defendants' Motion to Dismiss. ECF No. 38. For the reasons set forth below, the Court recommends that defendants' motion be granted in part and denied in part.[1] Specifically, the Court concludes that the plaintiffs have sufficiently asserted a claim under both the Fair Labor Standards

---

[1]     In order to make review of the issues raised by the defendants in opposition to the plaintiffs' claims most efficient, the Court granted the plaintiffs' Motion to Amend, ECF No. 60, on June 14, 2017 and is treating the Amended Complaint as the operative pleading. *See* Order, ECF No. 78. The Court has considered all of the arguments made in the parties' memoranda related to both the motion to dismiss and motion to amend as being attacks upon and defenses of the Amended Complaint. *Id.*

Act ("FLSA") and the procedural due process clause of the Fourteenth Amendment against certain defendants. For a variety of reasons, their remaining claims should be dismissed.

## I.    Background

The plaintiffs are in the custody of the Minnesota Sex Offender Program ("MSOP"). Am. Compl. ¶¶ 1, 12-16, ECF No. 79. Each was civilly committed to MSOP custody at the conclusion of a prison term, and each expects to remain in MSOP custody for an "indefinite period of time." Am. Compl. ¶¶ 12-16. All five plaintiffs participate in the "Patient Pay Program" at MSOP, and they allege that they have been and will continue to be harmed by the defendants' wage policies related to their vocational placements. Am. Compl. ¶¶ 12-16.

The defendants fall into three categories. First, there are five state entity defendants: Minnesota State-Operated Services ("MSOS"), Minnesota State Industries ("MSI"), MSOP, the Department of Human Services ("MNDHS"), and the State of Minnesota. Am. Compl. ¶¶ 17-21. Second, the plaintiffs have sued current directors and executives of the various state entity defendants: Emily Johnson Piper, Nancy A. Johnston, Shirley Jacobson, and "Charlie" Hoffman. Am. Compl. ¶¶ 22, 24-25, 28-29. The third group, all former directors and executives of various state entity defendants, consists of Lucinda Jesson, Dennis Benson, and Shelby Richardson. Am. Compl. ¶¶ 23, 26-27. All of the individual defendants have been sued in both their official and personal capacities. Am. Compl. ¶ 6.[2]

The plaintiffs argue that a number of the defendants' policies, both past and present, violate their federal statutory and constitutional rights. Primarily, the plaintiffs allege that the wage policies for MSOP's vocational programs violate the FLSA and various constitutional guarantees. They allege that they are "employees" within the meaning of the FLSA and that the defendants violate the FLSA by withholding half of their paychecks. They also claim that the defendants have historically conditioned

---

[2]    The plaintiffs state that they are suing "each [i]ndividual [d]efendant . . . in their respective official and individual capacities," and then specifically list five of the seven individual defendants. Am. Compl. ¶ 6. In liberally construing the allegations in the Amended Complaint, the Court assumes that all of the individual defendants are sued in both capacities.

their employment on completing "volunteer" work hours, and that the defendants require them to file tax forms that incorrectly indicate they are independent contractors in violation of statutory and constitutional provisions.

The Amended Complaint includes six numbered counts, several of which involve more than one claim.

- Count I asserts a violation of the FLSA on the part of the state entity defendants by effectively paying the plaintiffs less than the federal minimum wage. Am. Compl. ¶¶ 125-27.

- Count II raises a claim pursuant to 42 U.S.C. § 1983, alleging that the defendants have deprived the plaintiffs of their equal protection rights guaranteed by the Fourteenth Amendment. Am. Compl. ¶¶ 128-30.

- Count III contains a § 1983 claim that the defendants have violated the plaintiffs' right to procedural due process through "garnishment of wages without basis in any civil judgment upon an underlying debt." Am. Compl. ¶¶ 131-33.

- Count IV raises a § 1983 claim asserting that until recently the defendants violated the FLSA, Thirteenth Amendment, and Fourteenth Amendment's substantive due process provisions by requiring the plaintiffs to perform unpaid work before and during their participation in the employment program. Am. Compl. ¶¶ 116-18, 134-36.

- Count V is a § 1983 claim alleging that the defendants have violated the Thirteenth Amendment and the substantive due process provisions of the Fourteenth Amendment by demanding the plaintiffs sign W-9 forms that indicate they are independent contractors, when they are really employees. Am. Compl. ¶¶ 137-39.

- Count VI alleges that the state entity defendants have violated § 504 the Rehabilitation Act by discriminating against the plaintiffs in the wage rate they are paid. Am. Compl. ¶¶ 140-54. The plaintiffs specifically assert that the discrimination is impermissible because it is based on their non-sexual personality disorders and the perception that they are

mentally impaired as a result of sexual behavior disorders. Am. Compl.
¶¶ 145-46.

As remedies for these claims, the plaintiffs seek a declaratory judgment, damages, and injunctive relief. Prayer for Relief, Am. Compl. at 54-55.

## II.    R&R Roadmap

The claims in the Amended Complaint are detailed and often intertwined. And because the plaintiffs are proceeding pro se, the Court must read the Amended Complaint liberally and construe it "in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (citing *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). The myriad issues raised against the three sets of defendants often rise or fall on similar analyses, so this R&R will discuss the various claims by controlling rationale, rather than simply following the order of claims in the Amended Complaint. The following summary reflects the organization of this R&R and indicates the Court's recommendation and rationale for each claim.

| Count | Claim | Recommendation & Rationale | Section of R&R |
|---|---|---|---|
| I | FLSA for minimum wage (state entity defendants) | Survives (adequately stated claim) | V |
| II | § 1983 equal protection (state entity defendants)<br>§ 1983 equal protection (individual defendants in their official capacities, seeking damages) | Dismiss without prejudice (sovereign immunity) | III |
| | § 1983 equal protection (individual defendants) | Dismiss (failure to state a claim) | VI |
| | § 1983 equal protection (individual defendants in their historic official capacities, seeking injunctive relief) | Dismiss (mootness) | XII |
| III | § 1983 procedural due process for wage withholding (state entity defendants)<br>§ 1983 procedural due process for wage withholding (individual defendants in their official capacities, seeking damages) | Dismiss without prejudice (sovereign immunity) | III |
| | § 1983 procedural due process for wage withholding (individual defendants in their official capacities, seeking injunctive relief) | Survives (adequately stated claim) | VII |
| | § 1983 procedural due process for wage withholding (individual defendants in their personal capacities) | Dismiss (qualified immunity) | XI |
| | § 1983 procedural due process for wage withholding (individual defendants in their historic official capacities, seeking injunctive relief) | Dismiss (mootness) | XII |

| Count | Claim | Recommendation & Rationale | Section of R&R |
|---|---|---|---|
| IV | § 1983 FLSA, 13th Amendment, and 14th Amendment substantive due process for unpaid labor (state entity defendants) | Dismiss without prejudice (sovereign immunity) | III |
| | § 1983 FLSA, 13th Amendment, and 14th Amendment substantive due process for unpaid labor (individual defendants in their official capacities, seeking damages) | | |
| | § 1983 13th Amendment for unpaid labor (individual defendants in their personal capacities) | Dismiss (failure to state a claim) | VIII |
| | § 1983 FLSA and 14th Amendment substantive due process for unpaid labor (individual defendants in their personal capacities) | Dismiss (qualified immunity) | XI |
| V | § 1983 13th Amendment and 14th Amendment substantive due process for W-9s (state entity defendants) | Dismiss without prejudice (sovereign immunity) | III |
| | § 1983 13th Amendment and 14th Amendment substantive due process for W-9s (individual defendants in their official capacities, seeking damages) | | |
| | § 1983 13th Amendment for W-9s (individual defendants) | Dismiss (failure to state a claim) | VIII |
| | § 1983 14th Amendment substantive due process for W-9s (individual defendants) | | IX |
| | § 1983 13th Amendment and 14th Amendment substantive due process for W-9s (individual defendants in their historic official capacities, seeking injunctive relief) | Dismiss (mootness) | XII |
| VI | Rehabilitation Act (State of Minnesota) | Dismiss without prejudice (sovereign immunity) | III |
| | Rehabilitation Act (MSOS, MSI, MSOP, MNDHS) | Dismiss (failure to state a claim) | X |

## III.  Sovereign Immunity

The defendants invoke the Eleventh Amendment and the doctrine of sovereign immunity to argue that many of the plaintiffs' claims should be dismissed. "[S]overeign immunity is a jurisdictional threshold matter . . . ." *Lors v. Dean*, 746 F.3d 857, 861 (8th Cir. 2014) (citing *Harmon Indus., Inc. v. Browner*, 191 F.3d 894, 903 (8th Cir. 1999) (alterations in original omitted). Because these arguments implicate the Court's subject matter jurisdiction, they are analyzed under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Raising a "facial attack," the defendants argue that the Court lacks subject matter jurisdiction to hear certain parts of the case even if all of the facts in the complaint are accepted as true. *See, e.g.*, *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). The Court "must afford the non-moving party the same protections it would be entitled to under Rule 12(b)(6)." *Gilmore v. Nw. Airlines, Inc.*, 504 F. Supp. 2d 649, 653 (D. Minn. 2007) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). In considering sovereign immunity, the Court assumes the facts in the Amended Complaint to be true and construes all reasonable inferences in the light

most favorable to the plaintiffs. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In this case, two aspects of the sovereign immunity doctrine are most relevant: abrogation of immunity and what sorts of remedies sovereign immunity precludes.

The Eleventh Amendment protects states, their agencies, departments, and officials from suit in many circumstances. U.S. Const. amend. XI. "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, . . . a State cannot be sued directly in its own name regardless of the relief sought." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Some of the claims raised by the plaintiffs are in arenas where immunity has been waived, and others are not.

The State of Minnesota has not waived its sovereign immunity from suit in federal court, and Congress did not abrogate state sovereign immunity when it enacted § 1983. *Ezeani v. Dayton*, No. 15-cv-3232 (PJS/BRT), 2015 WL 9581318, at *2 (D. Minn. Dec. 7, 2015) (citing cases), *R&R adopted*, 2015 WL 9480452 (Dec. 29, 2015). Congress did, however, clearly abrogate state sovereign immunity with regard to alleged violations of the FLSA. *Humenansky v. Regents of Univ. of Minnesota*, 152 F.3d 822, 825 (8th Cir. 1998). And it abrogated state sovereign immunity with regard to the Rehabilitation Act, but only for state agencies that accept federal funds to administer programs or activities within the meaning of the Act. *Jim C. v. United States*, 235 F.3d 1079, 1081 (8th Cir. 2000). The Rehabilitation Act does not abrogate sovereign immunity for the State itself. *Id.*[3]

Additionally, even when immunity has not been waived or abrogated, the Eleventh Amendment does not bar suits against state officials that seek prospective injunctive relief to ensure future compliance with federal law. *See Randolph v. Rodgers*, 253 F.3d 342, 345 (8th Cir. 2001) (describing holding in *Ex parte Young*, 209 U.S. 123

---

[3]     The plaintiffs allege that MNDHS "and/or the other [state] entity defendants" accept federal funds to run MSOP and vocational programs for MSOP detainees. Am. Compl. ¶ 141. In liberally construing the Amended Complaint, the Court interprets this allegation to be that all of the state entity defendants accept federal funds to administer MSOP and its related activities. The Court assumes that this allegation is sufficient at the motion to dismiss stage to establish that the State has waived sovereign immunity for Rehabilitation Act claims against MSOS, MSI, MSOP, and MNDHS. However, as explored below, the Court recommends dismissal of the plaintiffs' Rehabilitation Act claim against those defendants on other grounds.

(1908)). However, a federal court may not impose retroactive relief that requires state officials "to use state funds to make reparation for the past." *Edelman v. Jordan*, 415 U.S. 651, 665 (1974). In other words, while state officials can be sued for prospective injunctive relief to stop enforcement of policies and statutes that violate federal law, federal courts lack jurisdiction to order the payment of damages for historic violations. *See Guggenberger v. Minnesota*, 198 F. Supp. 3d 973, 998 (D. Minn. 2016).

Against this backdrop, the Court agrees that it lacks jurisdiction to entertain some of the plaintiffs' claims due to sovereign immunity. First, sovereign immunity precludes the plaintiffs' § 1983 claims against the state entity defendants and all claims for damages against the individual defendants in their official capacities. The Court also lacks jurisdiction over the plaintiffs' Rehabilitation Act claim against the State of Minnesota.

As a result, Counts II through V against the state entity defendants, the damages claims in Counts II through V against the individual defendants in their official capacities, and the Rehabilitation Act claim against the State of Minnesota should be dismissed without prejudice. This leaves the plaintiffs' FLSA claim, § 1983 claims for prospective injunctive relief against the individual defendants, § 1983 claims for damages against the individual defendants in their personal capacities, and the Rehabilitation Act claim against the state agencies and entities.

## IV.    Rule 12(b)(6) Standard

The defendants argue that under Federal Rule of Civil Procedure 12(b)(6), the remainder of the plaintiffs' claims fail to state a basis upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 500 U.S. 544, 570 (2007). This standard does not require the inclusion of "detailed factual allegations" in a pleading, but the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In applying this standard, the Court must assume the facts in the complaint to be true and must construe all reasonable inferences in the light most favorable to the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). But the Court need not accept as true any wholly conclusory allegations, *Hanten v.*

7

*School District of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that the plaintiff draws from the facts pled, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

## V.   FLSA Claim

In Count I, the centerpiece of the plaintiffs' complaint, they allege that the state entity defendants have violated the FLSA by refusing to pay them minimum wage. Am. Compl. ¶¶ 125-27. The defendants argue that the plaintiffs are not "employees" within the meaning of the statute, and point to the analysis of Magistrate Judge Jeffrey Keyes in *Martin v. Benson*, 827 F. Supp. 2d 1022, 1024-30 (D. Minn. 2011), in support of their position.

The FLSA requires payment of a minimum wage and provides other protections to employees. *See, e.g.*, 29 U.S.C. §§ 206, 207, 214, 215. "The Supreme Court has suggested that 'employee' is expansively defined under the FLSA," and has indicated that courts should determine whether an individual is an "employee" covered by the Act in light of the "economic reality" of the situation under the totality of the circumstances. *Barnett v. Young Men's Christian Ass'n, Inc.*, No. 98-3625, 1999 WL 110547, at *1 (8th Cir. Mar. 4, 1999) (per curiam).

At the outset, the Court declines the defendants' invitation to rule that MSOP detainees are categorically beyond the reach of the FLSA because they are essentially prisoners, who are not covered the FLSA. Defs.' Mem. at 9-14, ECF No. 40. This argument was explicitly rejected in *Martin*, 827 F. Supp. 2d at 1026, and runs contrary to Eighth Circuit precedent that applies the economic reality test to determine whether people in custody are protected by the Act, rather than adopting categorical exclusions. *See, e.g.*, *Barnett*, 1999 WL 110547, at *1; *McMaster v. Minnesota*, 30 F.3d 976, 978 (8th Cir. 1994). Indeed, even if prisoners serving sentences were categorically excluded from the FLSA, not everyone in state custody, including pretrial detainees, those who are civilly committed, and MSOP residents, would necessarily fall under such an exclusion. Therefore, the Court looks to the economic reality of the plaintiffs' lives and work in determining whether they are "employees" within the meaning of the FLSA. *Martin*, 827 F. Supp. 2d at 1025-26; *Barnett*, 1999 WL 110547, at *1; *McMaster*, 30 F.3d at 978.

The plaintiff in *Martin*, like the plaintiffs here, participated in the MSOP's vocational programs and objected to most of the same wage policies. The Court

therefore adopts Judge Keyes's description and interpretation of the statutory scheme in which MSOP's vocational programs operate. However, there are two key differences between the factual allegations in this Amended Complaint and the considerations discussed in *Martin* that affect the economic reality analysis at this early stage of the litigation, and that merit a different outcome in this case.

First, in marked contrast to *Martin*, the plaintiffs here do not concede that the state entity defendants provide for their basic needs. *Compare Martin*, 827 F. Supp. 2d at 1030, *with* Am. Compl. ¶¶ 72, 75-76, *and* Pls.' Resp. at 19, ECF No. 55. In the Eighth Amendment context, the concept of "basic needs" covers the "state's obligation to provide inmates with reasonably adequate shelter, fire protection provisions, food, sanitation, ventilation, medical care, dental care and mental health care, hygienic materials and utilities, such as hot and cold water, light, heat and plumbing." *Cody v. Hillard*, 599 F. Supp. 1025, 1048 (D.S.D. 1984), *aff'd*, 799 F.2d 447 (8th Cir. 1986), *on reh'g*, 830 F.2d 912 (8th Cir. 1987). Though not inmates, the plaintiffs are wards of the state, and the "basic needs" of an MSOP detainee for the purposes of an FLSA economic reality analysis are undoubtedly similar, and at least as comprehensive. But the plaintiffs have alleged that various basic needs are not, or are only partially, met. Specifically, they allege that they must pay for clothing, shoes, medical care, personal hygiene supplies, hearing aids, and other medical devices. Am. Compl. ¶ 72; Pls.' Resp. at 19. These allegations plausibly suggest there may be basic needs that are not met by the state entity defendants, which distinguishes the current allegations from *Martin* for the purposes of a motion to dismiss, and from the prisoner cases on which the defendants rely.[4]

Second, the plaintiffs urge that their "economic reality" is impacted by the "bill" they receive monthly for the cost of their commitment at MSOP. Am. Compl.

---

[4]    The Court notes that a developed factual record may demonstrate that the basic needs of MSOP residents are in fact fully met by the defendants. However, at this stage, the Court must take as true the plaintiffs' claim that certain specifically identified needs are not met. And the defendants' did nothing to establish that, as a matter of law, the items listed by the plaintiffs are irrelevant to the economic reality test. Because this issue was conceded by the plaintiff in *Martin*, the *Martin* court did not examine the extent to which any needs that are not covered are relevant to the FLSA analysis.

¶¶ 75-76, 96. Specifically, although some of their basic needs are indisputably met, they are presented with a very large annual tab for any costs they are not required to pay for in cash. The plaintiffs allege that their confiscated wages are not used to offset these costs, but rather go toward "defrayment of the losses to MSI," one of the entities involved in the work program. Am. Compl. ¶¶ 96, 98. An arrangement where wages are confiscated but not used to offset the growing debt the state expects each individual to pay strongly implies that payment will be due upon release. Such a scenario is materially different than those considered in the other custody cases upon which the defendants rely to argue the FLSA does not apply. If, at the end of their commitments, the plaintiffs are expected to pay the state defendants back for the costs of their care, the Court cannot fairly consider the plaintiffs' basic needs to be met by the defendants; rather, payment for those needs is merely deferred. While the Court does not conclude that, as a matter of law, the accruing debt requires application of the FLSA, it is certainly relevant to the economic reality test and it was not contemplated by the court in *Martin*.

Based on the foregoing, the Court finds that the plaintiffs have alleged facts adequate to survive a motion to dismiss on their FLSA claim. However, the Court cautions that this is by no means a conclusion that the plaintiffs *are* employees within the meaning of the FLSA or that the defendants have violated the statute's requirements. To prevail, the plaintiffs must establish the ultimate merit of the claim at a later stage of this litigation. Nonetheless, the Court recommends that the FLSA claim in Count I of the Amended Complaint be allowed to proceed.

## VI.    Equal Protection Claim

In Count II, the plaintiffs allege that the defendants have violated § 1983 by depriving them of their equal protection as guaranteed by the Fourteenth Amendment. They argue that they are afforded unequal treatment compared to other civilly committed persons, including those who are found to be mentally ill and dangerous, because individuals in MSOP custody are the only group subjected to a fifty percent confiscation of wages. Am. Compl. ¶¶ 108, 129. The plaintiffs allege that the individual defendants have acted with animus toward those in MSOP custody because they are considered "the very worst of sex offenders." Am. Compl. ¶ 109. However, even accepting these allegations as true, the plaintiffs have failed to state an equal protection claim.

At this stage, the plaintiffs must allege facts to show that they have been treated differently than similarly situated individuals and that the disparate treatment is as a result of the plaintiffs' membership in a suspect class or in violation of a fundamental right. *See Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008); *Bogren v. Minnesota*, 236 F.3d 399, 408 (8th Cir. 2000). In equal protection analysis, courts focus on the challenged government action and the degree to which the groups are similarly situated for the purpose of that action. *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994).

Here, the Court finds that the plaintiffs are not similarly situated to other civilly committed persons with regard to wages earned for work performed. Non-MSOP civilly committed individuals are held pursuant to entirely different statutory schemes. *See, e.g.*, Minn. Stat. § 253B.02, subd. 13 (defining "person who is mentally ill"); *id.* subd. 17(a) (defining "person who is mentally ill and dangerous to the public"); § 253D.02, subd. 15 (defining "sexual psychopathic personality"); *id.* subd. 16 (defining "sexually dangerous person"). The statutory criteria for commitments of persons who are "mentally ill" or "mentally ill and dangerous to the public" are fundamentally different from those covering the "sexually dangerous persons" and individuals with "sexual psychopathic personality" who are held at MSOP. *McDeid v. O'Keefe*, No. C0-03-177, 2003 WL 21525128, at *5 (Minn. Ct. App. July 8, 2003).

Additionally, numerous courts in this state and District have held that individuals detained at "one facility or unit are not considered to be 'similarly-situated' to detainees at other facilities or units for Equal Protection purposes." *Beaulieu v. Ludeman*, No. 07-cv-1535 (JMR/JSM), 2008 WL 2498241, at *13 (D. Minn. June 18, 2008); *see also, e.g.*, *Larson v. Jesson*, No. A10-2214, 2011 WL 2623446, at *4 (Minn. Ct. App. July 5, 2011); *Nelson v. State of Minnesota*, No. 04-cv-192 (MJD/JGL), 2005 WL 1719369 (D. Minn. July 20, 2005), *R&R adopted*, 2005 WL 2205826 (Sept. 8, 2005); *McDeid*, 2003 WL 21525128. State courts must make different findings in order to commit individuals pursuant to each statutory scheme, MSOP detainees are held in separate facilities, and the statutory schemes governing their working conditions are distinct. *See, e.g.*, Minn. Stat. § 253B.02, subds. 13, 17(a) (defining "person who is mentally ill" and "person who is mentally ill and dangerous to the public"); § 253D.02, subds. 15, 16 (defining "sexual psychopathic personality" and "sexually dangerous person"); §§ 246B.05, 246B.06 (statutory provisions governing MSOP vocational

work program). As a result, the Court finds that the plaintiffs are not similarly situated to other civilly committed persons for the purposes of claims related to their wages.

In their response to the motion to dismiss, the plaintiffs argue for the first time that their equal protection claim actually focuses on being treated differently from the subgroup of MSOP detainees who have petitioned and been allowed to participate in the Community Preparation Services ("CPS") program, and who receive minimum wage for their work. Pls.' Resp. at 56. However, even assuming this claim is adequately alleged, the Court finds that the plaintiffs are not similarly situated to individuals in the CPS program. Both the plaintiffs and defendants agree that individuals in the CPS program have been deemed closer to release than individuals held in the main MSOP program sites. *Id.*; Defs.' Reply, at 20, ECF No. 64. Those persons are further along in the multi-phase treatment program and are housed separately in an effort to prepare them for eventual release. This demonstrates that they are not, for the purposes of employment and wage policies, similarly situated to the plaintiffs. *See, e.g.*, *Women Prisoners of D.C. Dep't of Corr. v. D.C.*, 93 F.3d 910, 924 (D.C. Cir. 1996) (indicating that differences in custody level, among other factors, may mean individuals are not similarly situated for equal protection purposes).

The plaintiffs have failed to adequately allege a violation of their rights under the equal protection clause of the Fourteenth Amendment. Therefore, the claims in Count II for prospective injunctive relief and for damages from the individual defendants in their personal capacities should be dismissed.

## VII.    Procedural Due Process Claim

In Count III, the plaintiffs allege that the defendants have violated their procedural due process rights by withholding half of their wages. To state a procedural due process claim, a plaintiff must allege enough facts to establish (1) the existence of a protected liberty or property interest that has been interfered with by the government, and (2) that the procedures attendant to the interference were constitutionally insufficient. *See Taylor v. Armontrout*, 894 F.2d 961, 963 (8th Cir. 1989). The plaintiffs here have alleged that their wages are garnished without a civil judgment. Am. Compl. ¶¶ 110-15, 131-32. The defendants contend that the plaintiffs have no protected property or liberty interest in earning minimum wage, and suggest that even if they did, MSOP's grievance process is constitutionally adequate. *See* Defs.' Mem. at 23-25; Defs.' Reply at 13-14.

As to the defendants' contention that the plaintiffs lack any constitutionally protected interest in their wages, the Court has already found that the plaintiffs have adequately alleged the existence of a property interest created by the FLSA. Moreover, the Court declines to adopt the defendants' argument that *Jennings v. Lombardi*, 70 F.3d 994 (8th Cir. 1995), and *McMaster* compel the conclusion that the plaintiffs have no protected property interest because of their custodial status. Defs.' Mem. at 25. Both *Jennings* and *McMaster* are prisoner cases, and individuals in MSOP custody are not necessarily comparable to prisoners for all purposes. *See, e.g., Martin*, 827 F. Supp. 2d at 1027 (stating that prisoner-related FLSA precedent "does not entirely control the outcome" of the analysis); *Beaulieu v. Ludeman*, 690 F.3d 1017, 1028 (8th Cir. 2012) (indicating MSOP detainees' Fourth Amendment rights are comparable to those of pretrial detainees, not prisoners). While prisoner cases are certainly persuasive, they do not control the Court's analysis of wages in the MSOP context. *Martin*, 827 F. Supp. 2d at 1027.

Second, the defendants argue that, even if a protected property interest exists, the plaintiffs are afforded all the process they are due because the statute provides adequate notice that their wages might be withheld and because there is an internal grievance policy at MSOP that provides an adequate opportunity to be heard. Defs.' Reply at 19-20. However, the plaintiffs argue that the grievance mechanism is inadequate because it does not provide a meaningful opportunity to be heard and is more akin to a comment box than an actual opportunity to contest the withholding. Pls.' Resp. at 60.[5] Neither party carefully explores what constitutes satisfactory process in a situation such as this, nor whether the existing grievance policy meets such a standard.

"The requirements of due process are flexible and specific to each particular situation . . . ." *Senty-Haugen v. Goodno*, 462 F.3d 876, 887-88 (8th Cir. 2006) (internal quotation marks omitted) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)). Some scenarios require pre-deprivation process, some only require post-deprivation process, and what due process requires in a particular instance is dictated by the facts and legal landscape at issue. Courts are not clear about what constitutes sufficient process to

---

[5]    In referencing the policy, the parties cite to a URL that no longer works. The current MSOP Client Grievances Policy is available at https://mn.gov/dhs/assets/client-grievances-215-5021_tcm1053-277240.pdf.

permit government retention of wages earned by detained individuals. *E.g., compare Hale v. Arizona*, 993 F.2d 1387, 1399-1400 (9th Cir. 1993) (requiring a "meaningful hearing at a meaningful time" before a prisoner's wages could be deprived where a statute created a property interest), *and Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985) (en banc) (same), *with In re DNA Ex Post Facto Issues*, 561 F.3d 294, 301 (4th Cir. 2009) (implying there is no procedural due process claim when a statute permits withholding wages while individuals are in custody), *and Cook v. Lehman*, No. 97-36175, 1999 WL 638647 (9th Cir. Aug. 18, 1999) (implying that inmates receive adequate process related to wage deprivation where a statute explicitly sets percentages that can be withheld and the purposes for the withholding). However, despite this lack of clarity, at least two Courts of Appeals have concluded that concepts of procedural due process are implicated to some extent by the withholding of prisoners' wages.

Against this backdrop, the Court finds that the plaintiffs have adequately articulated a claim under the due process clause of the Fourteenth Amendment to survive the defendants' motion to dismiss. The plaintiffs have alleged that they do not receive a pre-deprivation process or any sort of hearing, but only that they can submit a grievance after their wages have been withheld, and they have further asserted that the process ultimately provided is constitutionally inadequate. The defendants respond that such a process is adequate, but offer no real analysis about what is constitutionally required in this context and how the grievance process satisfies such a requirement. While a more developed factual record accompanied by more careful legal analysis may demonstrate that the procedures provided are adequate, if indeed an underlying property interest is found at all, the motion to dismiss this claim should be denied at this stage. Accordingly, Count III's claim for prospective injunctive relief from the individual defendants should survive the motion to dismiss.[6]

## VIII.  Thirteenth Amendment Claims

The plaintiffs raise two distinct claims involving alleged violations of the Thirteenth Amendment. In Count IV, the plaintiffs allege the defendants have violated that amendment's protections by historically requiring the plaintiffs to

---

[6]    The claims in Count III seeking damages from the individual defendants in their personal capacities is discussed in Section XI, *infra*.

perform two hours of work without pay before being hired into the vocational program and one hour of work each week without pay in order to stay in the employment program.[7] Am. Compl. ¶¶ 116-18, 134-36. In Count V, the plaintiffs claim that the defendants have violated the Thirteenth Amendment by requiring they submit W-9 forms that identify them as independent contractors. Am. Compl. ¶¶ 137-39. They argue that the "required relinquishment by Plaintiffs of their status as employees under the FLSA as a condition of being given employment . . . by the only employers available to Plaintiffs" inflicts involuntary servitude on them. Am. Compl. ¶ 123.

The Thirteenth Amendment is applicable to "those forms of compulsory labor akin to African slavery" that would be similarly offensive in light of modern notions of liberty and humanity. *United States v. Kozminski*, 487 U.S. 931, 942 (1988) (quoting *Butler v. Perry*, 240 U.S. 328, 332 (1916)). Federal courts have consistently rejected "involuntary servitude" claims that rely on circumstances that are not truly "akin to African slavery" based on the Supreme Court's narrow interpretation of the amendment. *See Larson v. Swanson*, No. 09-cv-2270 (MJD/RLE), 2009 WL 3246854, at *2 (D. Minn. Oct. 5, 2009) (collecting cases). Against this backdrop, the Court cannot conclude that the plaintiffs' allegations about the unpaid work hours or the W-9 form bear any "meaningful resemblance to the American experience with slavery" before the ratification of the Thirteenth Amendment. *Id.* at *3. Neither the alleged policy of several hours of unpaid labor, nor the W-9 requirement come close to the level of slavery-like conditions. This is particularly true in light of the fact that individuals in MSOP custody are not required to work, let alone subject to coercion to make them do so. *See* Pls.' Resp. at 19 (indicating individuals in MSOP custody can choose not to work and opt to rely on General Assistance payments to make ends meet). As such, the plaintiffs have failed to state a Thirteenth Amendment claim in Counts IV and V of the Amended Complaint.

---

[7]    Unlike the plaintiffs' other § 1983 claims, the Court does not construe Count IV as encompassing a claim for prospective injunctive relief. The plaintiffs allege that the unpaid work policy at the heart of that Count has recently ended. Am. Compl. ¶ 116-17. Because the policy is no longer in force, there is no prospective injunctive relief to grant.

## IX.   Substantive Due Process Claim for Prospective Injunctive Relief[8]

In Count V, the plaintiffs allege that the defendants' W-9 policy also violates their Fourteenth Amendment substantive due process rights. This claim is similarly unavailing.

To state a substantive due process claim, a plaintiff must allege that a state has infringed on a "fundamental liberty interest[] without narrowly tailoring that infringement to serve a compelling state interest." *Riley v. St. Louis Cty.*, 153 F.3d 627, 631 (8th Cir. 1998) (internal quotation marks omitted). A right is fundamental if it is enumerated in the Constitution or if it is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *See, e.g.*, *Flowers v. City of Minneapolis*, 478 F.3d 869, 873 (8th Cir. 2007). A plaintiff may also state a substantive due process claim by asserting that "the government's actions either shock the conscience or offend judicial notions of fairness or human dignity." *Young v. City of St. Charles*, 244 F.3d 623, 628 (8th Cir. 2001) (internal quotation marks and citations omitted). This standard asks whether the government has applied existing laws in a manner that "shocks the conscience, offends a sense of justice or runs counter to the decencies of civilized conduct." *Rochin v. California*, 342 U.S. 165, 175 (1952) (Black, J., concurring) (internal quotation marks omitted). This standard is difficult to meet and requires proof that the government was motivated by "an improper or malicious motive." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 855 (1998). Only truly outrageous conduct will establish a substantive due process violation under this test. *Id.* at 849 ("[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.").

The plaintiffs have neither established the fundamentality of the right asserted in Count V, nor alleged the sort of conduct that satisfies the high "shocks the conscience" burden. The Court cannot imagine any fundamental right implicated by the requirement that individuals fill out tax forms—even erroneously—as a precondition to starting employment and the plaintiffs do not point to any cases that

---

[8]     As indicated above, *supra* note 7, the plaintiffs' § 1983 claim in Count IV related to the unpaid work hours does not include a request for prospective injunctive relief. The Fourteenth Amendment damages claim against the individual defendants in their personal capacities related to those allegations is discussed in Section XI, *infra*.

support that proposition. And nothing shocks the conscience about the defendants' conduct on this front. No authority from any court has even suggested that a similar W-9 policy implicates substantive due process. Accordingly, the plaintiffs' substantive due process claim in Count V should be dismissed.

## X.    Rehabilitation Act Claim

The plaintiffs allege that the state entity defendants violate the Rehabilitation Act by paying MSOP detainees less than civilly committed persons governed by other statutes. Although the Court has found that sovereign immunity likely does not preclude such an allegation, the plaintiffs have nonetheless failed to state a viable claim.

To establish a claim under § 504 of the Rehabilitation Act, a plaintiff must show that: "(1) he is a qualified individual with a disability[,] (2) he was denied the benefits of a program or activity of a public entity which receives federal funds, and (3) he was discriminated against based on his disability." *Turner v. Mull*, 784 F.3d 485, 494 (8th Cir. 2015) (quotation marks omitted) (quoting *Gorman v. Bartch*, 152 F.3d 907, 911 (8th Cir. 1998)).

The plaintiffs allege that the defendants discriminate against them by paying them less than other civilly committed individuals on the basis of their perceived sexual behavior disorders. Am. Compl. ¶ 146. A person can be covered by § 504 if he establishes that he has been discriminated against "because of an actual or perceived physical or mental impairment." 42 U.S.C. § 12102(3). However, a person is not a "qualified individual" under the Rehabilitation Act where the disability is a "sexual behavior disorder[]." 29 U.S.C. § 705(20)(F)(i). Reading these provisions together, the plaintiffs' perceived or actual sexual behavior disorders place them in the Rehabilitation Act carve out, regardless of whether they have other mental health diagnoses and regardless of whether they have formally been diagnosed with a sexual behavior disorder. *See, e.g.*, *Rice v. Michigan Dep't of Corrections*, No. 1:07-cv-578, 2007 WL 3471864, at *5 (W.D. Mich. Oct. 10, 2007).[9] As a result, the plaintiffs have not

---

[9]    This is not to say that the Rehabilitation Act is categorically unavailable to individuals in MSOP custody. A Rehabilitation Act claim might be available to an individual in MSOP custody who could adequately state a claim for discrimination as a

(*footnote continued on next page*)

established that they are qualified individuals within the meaning of § 504 of the Rehabilitation Act.

The plaintiffs have failed to state a claim under § 504 of the Rehabilitation Act, and Count VI should be dismissed.

## XI.  Qualified Immunity

The only claims against individual defendants in their personal capacities that have not yet been addressed are the damages aspects of the procedural due process claim in Count III and the plaintiffs' FLSA and substantive due process claims related to unpaid work hours raised in Count IV.[10] Am. Compl. ¶¶ 116-18, 134-36. The Court finds that these claims for damages must be dismissed due to the defendants' qualified immunity.

Qualified immunity protects government officials from liability under § 1983 where their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *see also Baribeau v. City of Minneapolis*, 596 F.3d 465, 473 (8th Cir. 2010). The Court applies the doctrine of qualified immunity in a manner that "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

The plaintiffs have pointed to no authority that would indicate that they had rights so clearly established by either the FLSA or the due process clause of the Fourteenth Amendment that they can overcome qualified immunity on these remaining claims. Indeed, as the Court has discussed at length above, the rights at issue in each of these claims are quite far from clearly established. Any protection provided by the FLSA or the Fourteenth Amendment is certainly not so established that the plaintiffs' allegations demonstrate the defendants were plainly incompetent or

---

result of a covered physical or mental disability. However, alleged discrimination on the basis of perceived or actual sexual behavior disorders is not covered by the Act.

[10]    Because the Court has recommended dismissing the other damages claims against the individual defendants in their personal capacities on Rule 12(b)(6) grounds, the Court need not address whether qualified immunity attaches to those allegations.

knowingly violated the law by following a state statute or MSOP policies. *Walker*, 414 F.3d at 992. Simply put, these rights are not so clearly established that the individual defendants should be personally liable for damages. As a result, the damages claims in Count III and the FLSA-related and Fourteenth Amendment substantive due process claims in Count IV against the individual defendants in their personal capacities should be dismissed.

## XII.  Specific Individual Defendants

Finally, in Counts II, III, and V, the plaintiffs seem to seek injunctive relief not only from the individual defendants currently in executive positions at the state entity defendants, but from officials whose historic roles placed them in a position to affect MSOP's wage policies. Because Ms. Jesson, Mr. Benson, and Ms. Richardson are no longer in positions where they could provide the requested injunctive relief if granted, those claims are moot and should be dismissed. *See Randolph*, 253 F.3d at 345-46 (finding claims against defendant-prison officials moot where plaintiff was no longer at the facility where the defendants worked because they could no longer provide the injunctive relief sought).

## XIII.  Conclusion

For the reasons set forth above, the Court recommends dismissal of the majority of the plaintiffs' claims. However, the Court finds that the plaintiffs have sufficiently alleged facts to survive dismissal at this early stage for their FLSA claim against the state entity defendants and their procedural due process claim for injunctive relief against the individual defendants in their official capacities.

**Recommendation**

Based on the foregoing, the Court makes the following recommendations:

1. The defendants' Motion to Dismiss, ECF No. 38, should be **GRANTED IN PART and DENIED IN PART**.

2. Based on the analysis in Section III above, Counts II through V against the state entity defendants, the damages claims in Counts II through V against the individual defendants in their official capacities, and the Rehabilitation Act claim against the State of Minnesota should be

19

**DISMISSED WITHOUT PREJUDICE** because the Court lacks subject matter jurisdiction over those claims due to sovereign immunity.

3.  Based on the analysis in Sections VI, VIII, and IX above, the claims in Count II, Counts IV and V related to the Thirteenth Amendment, and Count V related to the Fourteenth Amendment for prospective injunctive relief and damages from the individual defendants should be **DISMISSED** for failure to state a claim.

4.  Based on the analysis in Section X above, Count VI against MSOS, MSI, MSOP, and MNDHS should be **DISMISSED** for failure to state a claim.

5.  Based on the analysis in Section XI above, the claims in Counts III and IV for damages from the individual defendants in their personal capacities should be **DISMISSED** as barred by qualified immunity.

6.  Based on the analysis in Section XII above, the claims in Counts II, III, and V for prospective injunctive relief from Lucinda Jesson, Dennis Benson, and Shelby Richardson should be **DISMISSED** as moot.

7.  Based on the analysis in Section V above, Count I against the state entity defendants should move forward.

8.  Based on the analysis in Section VII above, Count III against the individual defendants in their official capacities for prospective injunctive relief should move forward.


Date: July 5, 2017                          s/ *Katherine Menendez*
                                            Katherine Menendez
                                            United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.