# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

DAVID LE ROY GAMBLE, JR., CYRUS
PATRICK GLADDEN, II, DAVID JAMES
JANNETTA, JERRAD WILLIAM WAILAND,
and CLARENCE ANTONIA WASHINGTON,
*and all others similarly situated*,

                Plaintiffs,

v.

MINNESOTA STATE-OPERATED SERVICES,
MINNESOTA STATE INDUSTRIES,
MINNESOTA SEX OFFENDER PROGRAM,
DEPARTMENT OF HUMAN SERVICES, THE
STATE OF MINNESOTA, EMILY JOHNSON
PIPER, and JODI HARPSTEAD, *in her
official capacity*,

                Defendants.

Civil No. 16-2720 (JRT/KMM)

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND DENYING
PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

---

Charlie R. Alden, **GILBERT ALDEN BARBOSA PLLC**, 2801 Cliff Road East, Suite 200, Burnsville, MN 55337, for plaintiffs.

Kathryn Iverson Landrum, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101, for defendants.

Plaintiffs, civil detainees in the Minnesota Sex Offender Program ("MSOP") and participants in MSOP's Vocational Work Program ("VWP" or "Program"), initiated this case against MSOP, claiming that the Program constitutes employment under the Fair Labor Standards Act ("FLSA") and MSOP improperly withholds a portion of their wages.

Defendants have filed a Motion for Summary Judgment, and Plaintiffs have filed a partial Motion for Summary Judgment as to Defendants' liability. Because there remains no genuine dispute of material fact that the VWP is not employment as defined in the FLSA, the Court will grant Defendants' Motion and deny Plaintiffs' Motion. Further, the Court will deny Plaintiffs' Motion because Defendants are immune from liability under the Portal-to-Portal Act.

## BACKGROUND

### I. FACTUAL BACKGROUND

#### A. MSOP Vocational Work Program

Plaintiffs are MSOP detainees who participate in the VWP. (Decl. Charlie Hoffman ("1st Hoffman Decl.") ¶ 26, Ex. 3 at 24, Oct. 5, 2020, Docket No. 272-1.) VWP participants are paid Minnesota's minimum wage of $10.00 per hour, but a portion of their earnings is withheld to offset the VWP's costs, pursuant to Minnesota Statute § 246B.06, subdivision 6. (*See* Decl. Shirley Jacobson ("Jacobson Decl.") ¶ 2, Oct. 5, 2020, Docket No. 273.)

Placements in the Program fall under two categories: labor positions maintaining the facilities and assignments in the Minnesota State Industry ("MSI") shops. MSOP's facility in St. Peter has a horticultural program, a "warehouse and distribution" for various government agencies, as well as wood, upholstery, and digital-print shops. (1st Decl. Kathryn Iverson Landrum ("1st Landrum Decl.") ¶ 2, Ex. A ("1st Hoffman Dep. Excerpts") at

46:15–20, 47:3–15, Oct. 5, 2020, Docket No. 269-1.) MSOP's Moose Lake facility has a sign shop, a horticultural program, and "a warehouse and distribution" for government agencies. (1st Hoffman Dep. Excerpts at 46:25–47:15.) MSI shops do not provide goods or services to the private sector and the cost to operate the programs exceeds sales. (1st Hoffman Decl. ¶ 3; 2nd Decl. Charlie Hoffman ("2nd Hoffman Decl.") ¶¶ 2–4, Oct. 26, 2020, Docket No. 283.) MSI's net profits "must be used for the benefit of the civilly committed sex offenders as it relates to building education and self-sufficient skills." Minn. Stat. § 246B.06, subd. 1(b).

The VWP is not self-sufficient; taxpayer dollars fund VWP staff and detainees' salaries, (Jacobson Decl. ¶ 4), and the Program operates at a deficit. (2nd Hoffman Decl. ¶¶ 2–4.) MSOP's operating costs would not increase if the Program ceased to exist, because it is expensive to operate and does not make money. (2nd Hoffman Decl. ¶ 7.) MSOP does not rely on the VWP to maintain its facilities. For example, MSOP has continued operating throughout the COVID-19 pandemic, despite the fact that the number of Program placements has decreased and that MSOP also reduced its staff. (1st Hoffman Dep. Excerpts at 216:10–21.) Plaintiffs assert that union employees have taken

over their former VWP placements, but submit no admissible evidence to support their view, and MSOP denies that any such replacement has occurred. (2nd Hoffman Decl. ¶ 8.)

### B. Detainee Treatment and Participation in the VWP

As of October 2020, 397 out of MSOP's 736 detainees participated in the Program. (1st Hoffman Decl. ¶ 4.) A detainee's primary therapist must consider him "vocationally ready" in order receive a placement in the VWP. (*Id.* ¶ 5.) MSOP's Vocational Planning Committee places detainees in the VWP according to their treatment needs, not their qualifications. (*Id.* ¶ 8.) Enough placements are available for all detainees who want to participate and are able to do so. (2nd Decl. Kathryn Iverson Landrum ¶ 2, Ex. A ("2nd Hoffman Dep. Excerpts") at 120:17–22, Oct. 26, 2020, Docket No. 282-1.) Plaintiffs present no evidence that a vocationally-ready detainee seeking a placement has been denied one. Detainees can be suspended but not terminated from their placements. (1st Hoffman Decl. ¶ 18.)

To incentivize detainee participation in sex-offender treatment, detainees become eligible for more hours in the VWP as they progress through treatment. (*See* 1st Landrum Decl. ¶ 3, Ex. B ("Herbert Dep.") at 79:13–15, Oct. 5, 2020, Docket No. 269-1.) For example, detainees who choose not to participate in sex-offender treatment may participate in the Program up to 8 hours per week, while detainees in Phase III of treatment may participate up to 30 hours per week. (1st Hoffman Decl. ¶ 26, Ex. 3 at 27, Oct. 5, 2020, Docket No. 272-1.) Additionally, as detainees progress through treatment,

their take-home pay increases. (1st Hoffman Decl. ¶ 11.) Detainees opting out of sex-offender treatment and those in Phases I or II keep 50 percent of the Minnesota state minimum wage, whereas detainees in Phase III keep 75 percent. (*Id.*)

Detainees' participation in the VWP is communicated to MSOP staff and is incorporated into detainees' sex-offender treatment plans. (Decl. Jannine Herbert ("Herbert Decl.") ¶¶ 11–14, Oct. 5, 2020, Docket No. 271; 1st Landrum Decl. ¶ 7, Ex. F ("Johnston Dep.") at 45:9–46:23, Oct. 5, 2020, Docket No. 269-1.) MSOP employees working with the Program are considered part of the "treatment team," and are trained to assist detainees in their treatment goals. *See* Minn. R. 9515.3070. (2nd Hoffman Decl. ¶ 8; *see also* Herbert Dep. at 108:5–09:3; Johnston Dep. at 33:20–34:3, 39:4–9.) VWP staff must have post-secondary education in the behavioral sciences, social work, or nursing, or have at least 2000 hours of direct employment working with a population similar to MSOP's. Minn. R. 9515.3060, subp. 2(C).

Defendants also disclosed expert witnesses who have opined that the Program is a component of sex-offender treatment. (*See* 1st Landrum Decl. ¶ 10, Ex. I ("Expert Disclosures"), Oct. 5, 2020, Docket No. 269-1.) For example, Defendants' expert Pamela Yates concluded that MSOP has built vocational rehabilitation services into its model and that the VWP is intentionally integrated with the treatment provided at MSOP. (Expert Disclosures, Ex. A at 169–70.) Nicole Hawkins, an expert witness and clinical supervisor

with the Minnesota Department of Human Services, opined that vocational programming enhances treatment within MSOP. (Expert Disclosures, Ex. B ¶¶ 1, 3–6.)

### C. MSOP Cost of Care

Along with treatment, Minnesota Regulations mandate that MSOP must provide detainees a basic standard of living, which includes three meals a day, beds, bedding, linens, and laundry services. Minn. R. 4665.1900, 4665.2000, 4665.2800, 4665.5500. MSOP must also provide dental and optometry care for detainees, and all detainees must apply for government-funded health insurance. (1st Decl. James Berg ("Berg Decl.") ¶ 3, Oct. 5, 2020, Docket No. 270.) Additionally, although not required by state regulation, MSOP provides access to televisions, computers, a library, and a gym, recreational options, spiritual services, and degree and certification programs. (Johnston Dep. at 65:11–19; 1st Landrum Decl. ¶ 4, Ex. C ("Mesojedec Dep.") at 30:12-21, 49:6-19, Oct. 5, 2020, Docket No. 269-1; Berg Decl. ¶ 5.) However, detainees have testified that they reject MSOP's offerings in favor of purchasing their own food items, toiletries, and clothing. (*See, e.g.*, Aff. Charlie R. Alden ¶ 8, Ex. F at 56:14–59:14, Oct. 5, 2020, Docket No. 259.)

Adults in Minnesota correctional institutions, including MSOP detainees, may be required to "pay all or a part of the cost of their board, room, clothing, medical, dental and other correctional services." Minn. Stat. § 243.23, subd. 2. Upon admission to MSOP, detainees disclose personal financial information to determine whether they can afford

to contribute toward their cost of care and, if so, how much. *See id.* § 246.51, subd. 1a. If a detainee refuses to provide such information, the statute provides that the detainee or their relatives are liable for the full cost of their care until sufficient information is provided. *Id.*

When a detainee is deemed able to pay, the Minnesota Department of Human Services bills MSOP detainees $393.00 per day for the cost of their care. (Jacobson Decl. ¶ 6.) Money withheld from detainees' VWP wages is not deducted from the cost-of-care amount they individually owe to MSOP; rather, the withholding, which can be "up to 50 percent of any payments made to an individual," goes toward "reducing state costs associated with operating [MSOP]." Minn. Stat. § 246B.06, subd. 6. The DHS Commissioner may pursue a civil action to recover the amount a detainee owes for cost-of-care when a detainee is provisionally discharged, or upon a detainee's death, from a detainee's estate or relative. *Id.* §§ 246.511, 246.52.

Since August 2013, MSOP has received a total of $12,308.93 in cost-of-care payments, from seven detainees, none of whom are Plaintiffs here. (Jacobson Decl. ¶ 7.) No current detainee pays for cost of care, no named or sample Plaintiff has paid any amount toward their cost of care, and MSOP has never received cost-of-care payments

from a detainee's estate or relative following a detainee's death.[1]  (Jacobson Decl. ¶¶ 9–10.)  Indeed, Shirley Jacobson, MSOP's CFO of Direct Care and Treatment since 2016, has never initiated a court action to obtain cost-of-care payment during her tenure.  (Jacobson Decl. ¶ 9.)

## II. PROCEDURAL HISTORY

On August 12, 2016, Plaintiffs filed a Complaint against Defendants, pursuant to 42 U.S.C. § 1983, alleging that they are entitled to the federal minimum wage under the FLSA and that MSOP improperly deducts a portion of their wages.  (Compl., Aug. 12, 2016, Docket No. 1; Am. Compl. ¶¶ 125–27, June 14, 2017, Docket No. 79.)  Plaintiffs also asserted claims for violation of the Rehabilitation Act, and violations of the Fourteenth Amendment Equal Protection Clause, Fourteenth Amendment Due Process Clause, and Thirteenth Amendment prohibition on involuntary servitude.  (Am. Compl. ¶¶ 128–54.)  Plaintiffs seek actual and liquidated damages, as well as declaratory relief enjoining

---

[1] Although Plaintiff Jannetta testified that two MSOP detainees received inheritances "which [MSOP] took" and that another detainee's parents pay for his cost of care (Aff. David Jannetta ¶¶ 8–10, Nov. 9, 2020, Docket No. 294), Plaintiff Janetta's testimony on this matter is unsupported by other evidence and alone is insufficient to create a genuine dispute of material fact at summary judgment.

Defendants from violating the FLSA and ordering MSOP to pay VWP participants the federal minimum wage and withhold no portion of their wages. (*Id.* at 54–55.)

On December 22, 2016, Defendants filed a Motion to Dismiss. (Mot. Dismiss, Dec. 22, 2016, Docket No. 38.) On September 28, 2017, the Court granted, in part, Defendants' Motion to Dismiss the Amended Complaint, and denied the motion only with regard to Plaintiffs' FLSA claim. *Gamble v. Minnesota State-Operated Servs.*, No. 16-2720, 2017 WL 4325702, at *7 (D. Minn. Sept. 28, 2017).

On January 26, 2018, the class action opt-in Plaintiffs filed a Notice of Consent under 29 U.S.C. § 216. (Mot. Conditional Certification, Jan. 26, 2018, Docket No. 134.) On January 24, 2019, the Court granted their motion to conditionally certify a collective action. (Order, Jan. 24, 2019, Docket No. 191.)

On October 5, 2020, the parties filed motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56(a). (Pls.' Mot. Summ. J, Oct. 5, 2020, Docket No. 260; Defs.' Mot. Summ. J., Oct. 5, 2020, Docket No. 262.) Plaintiffs have moved for summary judgment only as to liability, while Defendants have moved for summary judgment on all claims or, alternatively, to decertify the class. Defendants have also moved to exclude

the testimony of Plaintiffs' expert, Karen Fisher. (Mot. Exclude, Oct. 5, 2020, Docket No. 263.) The parties primarily dispute whether the VWP is "employment" under the FLSA.

**DISCUSSION**

I.  **STANDARD OF REVIEW**

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)). The nonmoving party also may not "merely point to unsupported self-serving allegations, but must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor without resort to speculation, conjecture, or fantasy." *Reed v. City of St. Charles*, 561 F.3d 788, 790–91 (8th Cir. 2009) (quotations omitted). "The mere

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. At the summary judgment stage, the Court may not make credibility determinations or weigh the evidence before it. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

II.  ANALYSIS

   A.  **Fair Labor Standards Act**

The issue before the Court is whether the FLSA applies to MSOP detainees' participation in the VWP. The FLSA provides that employees receive a minimum wage. 29 U.S.C. §§ 206, 207, 214, 215. One of the FLSA's purposes is to provide employees "the minimum standard of living necessary for health, efficiency, and general well-being[.]" *Id.* § 202(a).

Plaintiffs have not presented any authority finding that civil detainees participating in a voluntary work program are considered employees under the FLSA, and despite extensive searching, the Court could not find any such case. While the Eighth Circuit has not ruled on this issue, other circuits have found that civilly committed sex offenders are not covered under the FLSA. Most recently, the Fourth Circuit determined that FLSA did not apply because a civilly committed person was not working to make a profit for the Bureau of Prisons and there was no bargained-for exchange, and the facility provided necessities for the detainees. *Matherly v. Andrews*, 859 F.3d 264, 278 (4th Cir. 2017).

Likewise, the First Circuit found that civil detainees were not subject to the FLSA because they were detained to protect society, and a minimum wage was not required to fulfill the FLSA's purpose because the detainees were cared for by the state. *Miller v. Dukakis*, 961 F.2d 7, 9 (1st Cir. 1992). The Seventh Circuit cited *Miller* in finding that the FLSA did not apply to work performed by civilly committed persons because the work was not critical to provide for their wellbeing. *Sanders v. Hayden*, 544 F.3d 812, 814 (7th Cir. 2008).

While Plaintiffs cite *Gonzales v. Mayberg* in support of their Motion, *Gonzales* is factually distinguishable and not as favorable as Plaintiffs assert. No. 07-6248, 2009 WL 2382686, at *4 (C.D. Cal. July 31, 2009). In *Gonzales*, the court rejected the idea that the plaintiffs could not be considered employees under the FLSA merely because they were civilly committed sex offenders, but dismissed their claim due to sovereign immunity. *Id.* at *5. Therefore, *Gonzales* is unpersuasive, and Plaintiffs have failed to establish any legal precedent for their claim.

### 1. Economic-Reality Test

Finding no supporting precedent, the Court considers the merits of Plaintiffs' theory. To determine whether a plaintiff is an "employee" under the FLSA, courts evaluate the "economic reality" of the parties' relationship based on the totality of the circumstances. *Barnett v. Young Men's Christian Ass'n, Inc.*, No. 98–3625, 1999 WL

110547, at *1 (8th Cir. Mar. 4, 1999); *see also Karlson v. Action Process Serv. & Private Investigations, LLC*, 860 F.3d 1089, 1092 (8th Cir. 2017).

The fact that an employer does not provide an employee his or her "basic needs" weighs in favor of finding an employer-employee relationship under the FLSA; the employee needs a minimum wage to purchase the basic necessities. *See* 29 U.S.C. § 202(a); *Villarreal v. Woodham*, 113 F.3d 202, 205–206 (11th Cir. 1997); *cf. Cody v. Hillard*, 599 F. Supp. 1025, 1048 (D.S.D. 1984), *aff'd*, 799 F.2d 447 (8th Cir. 1986), *on reh'g*, 830 F.2d 912 (8th Cir. 1987). One reason that Plaintiffs' FLSA claim survived Defendants' Rule 12 motion was Plaintiffs' allegation that MSOP does not provide for their basic needs. *See Gamble*, 2017 WL 4325702, at *3.

But with discovery complete, Plaintiffs have failed to demonstrate that there is a material fact in dispute regarding whether MSOP provides for their basic needs. Minnesota regulations require that MSOP provide detainees a basic standard of living including meals, beds and bedding, and laundry. *See* Minn. R. 4665.1900, 4665.2000, 4665.2800, 4665.5500. Plaintiffs do not contest that MSOP provides the required items, but maintain that detainees reject MSOP provisions in lieu of purchasing their own food, toiletries, and clothing, and thus Plaintiffs end up paying for their own basic needs.

The fact that detainees sometimes purchase items to supplement or replace MSOP's offerings does not mean that MSOP fails to meet their basic needs. Although MSOP's provisions may be rudimentary, Plaintiffs present no evidence that their basic

needs are unmet. *See Martin v. Benson,* 827 F. Supp. 2d 1022, 1029 (D. Minn. 2011) (concluding that, because MSOP detainees' "basic needs are met by the State," the Program did not warrant FLSA coverage). The issue of whether Minnesota's Administrative Rules are sufficient to ensure that MSOP detainees' basic needs are met is not before the Court.

At the motion to dismiss stage, the Court found that Plaintiffs pled a plausible FLSA claim in part because they alleged that they must repay MSOP for their cost of care. *Gamble*, 2017 WL 4325702, at *3. Indeed, adults in Minnesota correctional institutions, including MSOP detainees, may be required to "pay all or a part of the cost of their board, room, clothing, medical, dental and other correctional services." Minn. Stat. § 243.23, subd. 2. The DHS Commissioner may pursue a civil action to recover the amount a detainee owes for cost-of-care when a detainee is provisionally discharged, or upon a detainee's death, from a detainee's estate or relative. *Id.* §§ 246.511, 246.52.

Yet there is no evidence that MSOP pursues current or former detainees to recover cost-of-care payments. First, although MSOP has received over $12,000 in cost of care payments since August 2013, no portion of that was from Plaintiffs, and Plaintiffs have not shown through admissible evidence that any of them pay their cost of care. Without more, the fact that Minnesota law allows MSOP and other correctional facilities to seek cost-of-care payments is insufficient to show that MSOP does not provide for detainees' basic needs. Thus, there is no material fact in dispute as to whether MSOP meets its

detainees' basic needs, which weighs against finding an employer-employee relationship under the FLSA.

### 2. Benefit to MSOP

Plaintiffs also argue that an employer-employee relationship exists because the VWP confers a benefit on MSOP. Plaintiffs first contend that the MSI sign shop generates a profit for MSOP, creating an employer-employee relationship under the FLSA. But Plaintiffs' unsupported testimony that MSI generates a profit through the VWP does not create a genuine dispute of material fact. Defendants have testified that, if the VWP ceased to exist, MSOP's operating costs would not increase because MSOP would have to hire workers or pay hired wages; rather, the Program is expensive to operate and generates no money. Even if the Program did generate money, state law provides that MSI net profits be used for the benefit of MSOP detainees. *See* Minn. Stat. § 246B.06, subd. 1(b).

Plaintiffs merely speculate that their work through the VWP confers a benefit on MSOP by maintaining its facilities—for example, shoveling snow, preparing food, and mowing the lawn. Thus, Plaintiffs imply that MSOP saves money through assigning VWP placements to these tasks. But even if Plaintiffs offered evidence to support this assumption, they provide no legal authority supporting their theory that a nominal benefit in a custodial setting has a bearing on an FLSA analysis. Furthermore, contrary to Plaintiff's assertions, MSOP's continued operations during the COVID-19 pandemic

despite cuts to Program placements illustrates that MSOP is not dependent on VWP participants for maintenance.

Moreover, Plaintiffs submit no evidence or authority for the Court to distinguish *Martin*, which found that no employer-employee relationship existed between MSOP and the VWP participants, because the VWP "has few of the 'indicia of traditional, free market employment' covered by the FLSA" and MSI does not compete with businesses in the general labor market. 827 F. Supp. 2d at 1028–29 (quoting *Henthorn v. Dep't of Navy,* 29 F.3d 682, 686 (D.C. Cir. 1994)). Thus, Plaintiffs' assertion that their work benefits MSOP is insufficient to create a dispute of material fact. *See Reed*, 561 F.3d at 790–91.

In sum, considering the totality of the circumstances under the economic-reality test, Plaintiffs fail to show that there is any material fact in dispute, and the Court therefore finds that Plaintiffs cannot establish that they are employees within the meaning of the FLSA.

### 3. Sex-Offender Treatment

Additionally, Plaintiffs assert that the VWP does not constitute sex-offender treatment, yet concede that whether the Program is treatment is irrelevant to the question of whether participation in the program is employment under the FLSA. Defendants have presented expert testimony that the VWP is a component of treatment, and Minnesota law dictates that the VWP's purpose is sex-offender treatment. *See* Minn. Stat. §§ 246B.05 subd. 1 ("The vocational work program is an extension of therapeutic

treatment[.]"); *id.* § 246B.06, subd. 1(a) ("The commissioner may establish vocational activities for sex offender treatment[.]"). Further, all VWP staff members are trained on how to interact with people with sexual psychopathic personalities and sex offenders. *See* Minn. R. 9515.3070. Plaintiffs dispute that participation in VWP is part of their treatment, but Plaintiffs' own opinion testimony is insufficient evidence to establish that the Program is not treatment. Thus, even if determining whether the VWP is part of sex-offender treatment were relevant to the overarching question of whether participation in the VWP is employment under the FLSA, Plaintiffs' argument is unavailing.

**B.     Portal-to-Portal Act**

Finally, even if Plaintiffs could demonstrate that a material fact in dispute precludes summary judgment, Plaintiffs' Motion cannot succeed because the Portal-to-Portal Act shields Defendants from liability. The Portal-to-Portal Act protects defendants who plead and prove that an "act or omission was in good faith conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation." 29 U.S.C. § 259.

As noted above, the Court held in *Martin* that MSOP detainees' work within the VWP was not employment as defined in the FLSA. 827 F. Supp. 2d at 1029. Under the Portal-to-Portal Act, it was reasonable for MSOP to rely on a binding court opinion. *See* 29 U.S.C. § 259. Because *Martin* was binding authority, MSOP need not have sought a Department of Labor opinion, as Plaintiffs suggest, because such an opinion would have

been supplanted by binding court authority and would not have bound the Court in the present matter. *See Perez v. Contingent Care, LLC*, 820 F.3d 288, 293 n.4 (8th Cir. 2016) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Additionally, Minnesota law explains that the VWP is part of sex-offender treatment. Minn. Stat. § 246B.06, subds. 6–7. Thus, Defendants are immune from liability for Plaintiffs' FLSA claim because the wage withholding policy conformed, in good faith, with binding authority regarding application of the FLSA to the VWP.

**CONCLUSION**

Plaintiffs fail to demonstrate that there is any material fact in dispute to preclude summary judgment in regard to the FLSA claim, and Defendants' Motion is granted. In any event, Plaintiffs' Motion fails because Defendants are entitled to immunity under the Portal-to-Portal Act.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Partial Summary Judgment [Docket No. 260] is **DENIED;**

2. Defendants' Motion for Summary Judgment [Docket No. 262] is **GRANTED;**

3. Because the Court did not consider Ms. Fisher's testimony and the Court granted Defendants' Motion for Summary Judgment, Defendant's Motion to Exclude Expert Testimony [Docket No. 263] is **DENIED as moot**; and

4. The action is **DISMISSED with prejudice.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: June 30, 2021  
at Minneapolis, Minnesota.

_____  
JOHN R. TUNHEIM  
Chief Judge  
United States District Court